## Healy Ice Machine Company, Appellee, v. James B. Clow & Sons, Appellant.

### Gen. No. 14,498.

1. EVIDENCE—*when custom incompetent.* A custom of manufacturers and dealers is incompetent if it is in conflict with a substantive legal right.

2. WARRANTY—*when no, that merchandise is suitable.* Held, under the facts of this case that there was no implied warranty that merchandise would be fit and suitable for the particular use to which it was to be put.

Assumpsit. Appeal from the County Court of Cook county; the Hon. W. C. DE WOLF, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed May 20, 1909. Rehearing denied June 14, 1909.

Statement by the Court. This is an appeal from a judgment recovered by appellee in an action of *assumpsit* by it against appellant. The declaration consists of a special count and the common counts. It is averred in the special count, in substance, as follows: Plaintiff was engaged in manufacturing, erecting and installing ice making and refrigerating plants, and in its business used large quantities of wrought iron pipe, through which was distributed a compressed refrigerating medium. About April 18, 1904, the defendant, in consideration that plaintiff would buy of it 20,000 feet of wrought iron pipe for $2,100, and with full notice of the purpose for which the same was required by plaintiff, undertook to furnish said pipe at said price and deliver the same to the plaintiff, and promised plaintiff that said pipe should be of fair strength and reasonably fit for use in the construction and operation of a refrigerating plant, as aforesaid. Plaintiff purchased the pipe and paid therefor $2,076.90; but defendant delivered only 19,760 feet of pipe, which delivered pipe was unfit for plaintiff's requirements, and was not of the strength, quality or workmanship promised by defendant, and by reason

thereof said pipe, when placed in position, burst and leaked, and plaintiff, in removing, repairing and replacing the same, was put to great expense, to-wit, $700. The defendant pleaded the general issue, a special plea traversing the allegations of the special count, that the pipe was unfit and unsuitable and was not of the strength, quality and workmanship promised, and also filed a plea of set-off. The jury found the issues for the plaintiff and assessed its damages at $173.13. The court denied defendant's motion for a new trial and rendered judgment on the verdict.

WYETH, CLARK & ZOLLARS, for appellant.

BARRY & CROWLEY, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The following letters and acceptance passed between the parties:

"CHICAGO, Apr. 16th, 1904.
MESSRS. JAMES B. CLOW & SONS,
    City.
    GENTS: We hereby accept your offer to deliver twenty thousand feet of full weight wrought iron pipe in lengths of 20 ft. each, standard thread each end, F. O. B. cars Central Stock Yards, Louisville, Ky., within 15 days, for the sum of ten and one-half cents per foot, less 2%, 10 days.
THE HEALY ICE MACHINE CO.,
By F. McARDLE, Sect'y."

"CHICAGO, 4/18/04.
HEALY ICE MACHINE COMPANY,
    30th & Wallace Sts., Chicago;
    GENTLEMEN: As advised over 'phone today, we can ship you the 20,000 ft. of 2″ full-weight wrought iron pipe in lengths of 20 ft. each, standard thread, each end, some time during the coming week. We cannot guarantee its date of arrival at Louisville, but it will be shipped from a mill the nearest possible to destination. Please accept this by return mail.

As stated, the time of payment is very important, as we have been able to obtain the promise of shipment only on account of offer of cash discount within ten days.

Thanking you for the order, and trusting that the material will reach you in good time, we remain,

Yours truly,

JAMES B. CLOW & SONS,

J. C. Clow, Asst. Treas."

"Accepted:

THE HEALY ICE MACHINE CO.,

By F. McArdle, Sect'y."

The letter of April 16th, in purporting to be an acceptance, is explained by the evidence that prior to that date, the price per foot of the pipe, the place of delivery and the discount had been communicated to the plaintiff by the defendant. The letters, however, and plaintiff's acceptance, constitute a complete executory contract between the parties.

The defendant is a dealer in pipe, but not a manufacturer. It purchased the pipe from the Youngstown Sheet & Tube Co., a manufacturer, at Youngstown, Ohio. That company, at the instance of defendant, shipped the pipe, freight paid, to Louisville, Kentucky, April 27 and 28, 1904. After the pipe arrived at Louisville, George Campbell, plaintiff's erecting engineer, about July 5, 1904, proceeded to use it in the construction of a refrigerating plant for the Kentucky Packing & Provision Co., and completed the construction about August 1, 1904. He testified that he then applied an air test, but could not get over 100 pounds pressure, the refrigerating fluid, liquid ammonia, being inside the pipe and water on the outside, and that, when the pressure was applied the pipes leaked; that there were blow holes all over the pipe, like pin holes, and the pipe leaked, and that, as he figured, about 25 per cent of the entire pipe contained blow holes, and that, in his experience, only about 2 per cent, on the average, of blow holes is found in that kind of pipe furnished for the construction of refrigerating plants.

Campbell further testified that the blow holes in the pipe could not be discovered by the eye, but only by an air test. In September or October, 1904, he complained to James C. Clow, plaintiff's secretary, that the pipe was full of blow holes, and left samples of the defective pipe with him. The evidence that the pipe was defective is not contradicted by the defendant; but it is claimed that the plaintiff should have tested it before using it in the construction of the plant. This, of course, only goes to the question of damages, the plaintiff having been at the expense of taking the defective pipe from the plant and replacing, in its stead, sound pipe, etc. There is no certain evidence that the pipe was tested at the mills before shipment. Mr. W. C. Reilly, superintendent of the Youngstown Sheet & Tube Co., testified that pipe of the kind described is tested by the manfacturer, by subjecting it to a hydrostatic pressure of at least 800 pounds to the square inch; that he had knowledge of the manufacture and test of pipe from day to day, and from such knowledge and observation it was his best knowledge and belief that the pipe in question was, before shipment, tested by hydrostatic pressure of at least 800 pounds to the square inch. It is evident from this testimony, that the "knowledge and belief" of the witness is a mere deduction or conclusion from his knowledge of the custom of his company, in respect to testing. He does not state that he knew of the pipe having been tested. Both this witness and Day, secretary of the Youngstown Co., testified that air pressure is necessary to discover pin holes in the pipe. But William E. Clow testified that the hydrostatic test would show blow holes and sand holes, and is supposed to show pin holes.

William Clow testified that it is the custom of manufacturers to apply the hydrostatic test only. Campbell and McArdle both testified that it is the custom to test the pipes to be used in refrigerating after the plants are constructed and the pipes in them.

Campbell testified that the pipe was in twenty feet lengths, and that, to test the lengths separately it would be necessary to submerge each length of pipe in a water tank, clamp the ends so that they would not leak air, and then apply pressure from an air compressor, and this would be very expensive and would cost as much as testing after the pipe was in place in the plant.

Evidence was offered by the defendant tending to prove that there was a well-known custom of manufacturers and dealers, that, if pipe should prove defective, it should be returned to the seller and made good by him by credit or replacement. The court excluded the evidence, and it is objected by defendant's counsel that this was error. We cannot sustain the objection. The plaintiff had the right to retain the pipe, and in an action to recover the price to set off the damages resulting from its defective condition, or to institute an independent action for damages. Doane v. Dunham, 65 Ill. 512; Owens v. Sturges, 67 ib. 366; Prairie Farmer Co. v. Taylor, 69 ib. 440; Benjamin on Sales, 6 Am. ed., Secs. 894, 897.

Plaintiff's counsel contend, and argue at considerable length, that the defendant impliedly agreed that the pipe would be fit and suitable for use in a refrigerating plant, citing this language from the opinion in Telluride Power Co. v. Crane Co., 208 Ill. 218: "The rule is that if an article is to be made or supplied to the order of a purchaser there is an implied warranty of the fitness of the article for the special purpose designed by the buyer." We are of opinion that this doctrine has no application to the facts of this case. The pipe purchased by plaintiff is specifically described in the contract as "#2" full weight wrought iron pipe in lengths of 20 feet each, standard thread each end." The plaintiff had previously used large quantities of such pipe, and as McArdle testified, had purchased a great deal of pipe from defendant prior to the purchase of the pipe in question. It knew, from

its experience in its business, the sort of pipe which was fit and suitable better than did the defendant, and did not rely on the defendant's judgment or opinion as to whether the pipe ordered, if furnished as ordered, would be suitable in its business. Suppose the pipe delivered had been of good workmanship, material and quality, and of the dimensions mentioned, so that no fault could be found with it as pipe, and the plaintiff had discovered on trying it, that it was unsuitable; could it escape from its contract or recover damages on that ground? We think not. But assuming the doctrine to be applicable in the case at bar, what practical effect can it have? There is no contention on the part of the plaintiff that the pipe was unsuitable for any cause except that it was defective by reason of blow holes and pin holes, which caused it to leak when in place in the plant. It is not at all contended that the pipe, if free from the defects mentioned in the evidence, would have been unfit or unsuitable. It is evident from the instructions given at plaintiff's request, that his counsel, in submitting the case to the jury, relied only on the pipe being "of unsound material, poor in quality, or defective in workmanship." The jury were not asked to pass on the question, whether, if the pipe was of sound material, fair in quality and good workmanship, it was or was not suitable for use in plaintiff's business. McArdle, plaintiff's secretary, testified that in the early part of July, 1904, he received a report from Mr. Campbell, plaintiff's erecting engineer, about the defects in the pipe, and, about the middle of July, he read the report to Mr. Armstrong, defendant's city salesman, and told him the pipe was in bad condition and that the Kentucky Packing and Provision Co. was threatening plaintiff in respect to damages for delay in getting the work finished. Counsel for defendant claims that it was error to admit this evidence, on the ground that Armstrong was not authorized to receive such statement, and that there was no evidence that

he had reported it.  The evidence shows that Armstrong was the first person plaintiff communicated with in respect to the purchase of the pipe, and told him what was wanted, and he gave plaintiff the price. We think the evidence competent, but if not, it could not prejudice the defendant, as it was fully informed of the defective condition of the pipe in September or October, 1904.

Counsel for defendant do not question the rulings of the court on instructions, nor do they contend that the damages are excessive, their contention being that there can be no recovery.  We find no error in the record warranting a reversal of the judgment, therefore the judgment will be affirmed.

*Affirmed.*