Elevator Safety Device Company, Plaintiff in Error, v. Brown-Ketcham Iron Works, Defendant in Error.

### Gen. No. 14,918.

1. WARRANTY—*when implied contract of fitness does not arise.* In contracting for the purchase of a specific article under its patent or trade name, there is no implied contract as to its fitness for any particular purpose; also, when a known, described and definite article is ordered of the manufacturer there is no implied warranty that it would answer the particular purpose of the buyer, although the purpose is stated when the order is given.

2. EVIDENCE—*when question calls for conclusion.* A conclusion is

314     APPELLATE COURTS OF ILLINOIS.

Elevator Safety Device Co. v. Iron Works, 153 Ill. App. 313.

called for by a question which asks a witness whether or not he had any conversation with "any representative" of a party designated.

3. AGENCY—*how may not be established.* The fact of agency cannot be established by the declaration of the alleged agent.

Assumpsit. Error to the Circuit Court of Cook county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed March 18, 1910.

BULKLEY, GRAY & MORE, for plaintiff in error; C. PAUL TALMADGE, of counsel.

HAY & BROWN, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Plaintiff in error was the plaintiff below and brought this action of *assumpsit* to recover judgment against the defendant for the price of certain automatic optional freight elevator gate operating devices, the expenses of a man sent from Chicago to Pittsburg, Penn., in connection with installing the devices, and a small amount for freight charges. A jury was waived, the court rendered judgment for the defendant and from that judgment plaintiff prosecutes this writ.

A building called the Oliver building was being erected in Pittsburg and the defendant, Brown-Ketcham Iron Works, had contracted to do certain iron work in that building. The defendant sent a letter to the plaintiff, Elevator Safety Device Company, on November 10, 1903, as follows:

"BROWN-KETCHAM IRON WORKS.
Structural and Ornamental Iron and Steel.
Indianapolis, Indiana.
Oliver Building.
Indianapolis, Ind., Nov. 10, 1903.
Elevator Safety Device Company, 32 Market Street,
Chicago, Ill.

Gentlemen: We are now preparing to furnish the doors for the freight elevator openings in the Oliver building, Pittsburg, so we herewith accept your price

of twenty ($20) dollars per  opening for the twenty-six (26) openings for the Optional Freight Gate Operating Device, *same being delivered at the building as required, and subject to approval of the architect;* payments to be made in full thirty days after complete delivery and *acceptance by the architects.*

Kindly send us at your earliest convenience drawings showing your device, so that we may put the necessary holes, etc., in the doors to receive the same.

Also kindly furnish us with a drawing showing the attachment of your device to the elevator cab, so that we can instruct the elevator people what holes to put in their work.

An early compliance with our request will greatly oblige,

Your very truly,
BROWN-KETCHAM IRON WORKS,
P. Romstree, Mgr. Contract Dept.''

In replying to that letter plaintiff, while otherwise accepting the proposition made, changed the place of delivery.  The reply is as follows:

''JAMES H. CHANNON,
*President.*

W. H. HILANDS,
*Vice-President.*

HARRY CHANNON,
*Sec. and Treas.*

ELEVATOR SAFETY DEVICE CO.
Manufacturers of
Safety Appliance for
Elevators,
32 Market St.

Chicago, Nov. 14, 1903.

Brown-Ketcham Iron Works,
Indianapolis, Ind.

Gentlemen:  We are pleased to acknowledege receipt of your favor of the 10th inst., in which you order 26 sets of Optional Freight Gate Devices for the Oliver Building at Pittsburgh.

Order has been entered at price quoted, viz.: $20.00 per set *F. O. B. Chicago.*

We will call at the office of the D. H. Burnham Co.

on Monday to get data & etc., and after which we will send you drawing showing attachments & etc.

Thanking you for the order, we remain,

Yours truly,

ELEVATOR SAFETY DEVICE Co.,

James H. Channon, President.

Sub-Contract
  No. 440
  B. K. I. W.

Elevator Devices.''

After receiving that reply defendant responded with a letter as follows:

"BROWN-KETCHAM IRON WORKS.

Structural and Ornamental Iron and Steel,

Indianapolis, Ind.

Nov. 17th, 1903.

*Shipping Directions.*

Elevator Safety Device Company, 32 Market street, Chicago, Ill.

Gentlemen: Referring to our order for 26 sets Optional Freight Gate devices please ship via P. F. W. & C. Ry. as follows:

BROWN-KETCHAM IRON WORKS.

Care James McKibben,

Grant Street Station, Pittsburg, Pa.

Send bill of lading to this office same date shipment is made,

Yours truly,

BROWN-KETCHAM IRON WORKS,

E. R. Folsom, Traffic Manager.''

The question is raised whether by these letters there was a contract of an absolute sale and purchase or a sale subject to the approval of the architect of the building. The architect, after a trial thereof, disapproved of the devices. The devices were finally shipped back to plaintiff, but plaintiff refused to receive them. Plaintiff contends that because the subject of the sale was a patented article, therefore the sale was absolute. It is undoubtedly true, as contended, that in contracting for the purchase of a specific article under its patent or trade name there is no implied contract as to its fitness for any particu-

lar purpose (Peoria Grape Sugar Co. v. Turney, 175 Ill. 631, 633) and that when a known, described and definite article is ordered of the manufacturer there is no implied warranty that it shall answer the particular purpose of the buyer, although the purpose is stated when the order is given (Seitz ·v. Brewers' Refrigerating Co., 141 U. S. 510). But there is no room for the application of any such rule in this case. There is no implication so strong, in that connection, that parties may not avoid it by an express contract to the contrary. Furthermore, there is no question of applicability for a particular purpose involved in this case. Defendant was in the position of a sub-contractor for the iron work in the construction of a building and in what he furnished he was apparently dependent upon the approval of the architect. The purchase of this device was expressly conditioned upon the approval of the architect. Such being the contract there can be no recovery thereupon without evidence of the architect's approval. This disposes of the plaintiff's claim for recovery as·far as the 26 operating devices which were sent to Pittsburg under the contract evidenced by these letters are concerned.

Plaintiff's demand includes a claim for six devices at $18 each, which devices were shipped to Pittsburg subsequently to the twenty-six. There is no evidence in the record showing any contract, express or implied, for the purchase of these six devices.

The record shows that a man was sent to Pittsburg by plaintiff upon defendant's request. Some difficulty had arisen in the installing of the devices. The man was sent upon the arrangement that if the difficulty was due to some cause for which plaintiff was responsible then the expense of this man was to be borne by plaintiff, while if not the expense was to be borne by the defendant. The evidence fails to show who was responsible for the difficulty that had arisen. Indeed it does not clearly appear what the particular difficulty was. Upon this state of the record the plaintiff cannot recover the expense.

It is not made clear whether the $6.98 paid for freight is for freight upon the twenty-six devices, upon the six devices or upon both the six and the twenty-six. Neither does it appear whether the item is a proper freight charge. We cannot, therefore, say that the court erred in refusing recovery of that amount.

The trial court did not err in sustaining an objection asked by plaintiff's attorney of one of plaintiff's witnesses whether he had had any conversation with "any representative" of the Brown-Ketcham Iron Works. Such questions leave it to the witness to determine what may involve questions both of law and of fact, namely, that some person talked with was a representative of the party mentioned, and are exceedingly pernicious and objectionable. It later appeared that the person the witness had talked with had come to the witness and himself stated that he represented the Brown-Ketcham Iron Works. This statement by him would not make a conversation with him competent for it was not competent evidence that he was such representative. Had defendant's attorney at that time stated to the court, as he now asserts he did state that letters he would introduce referred to this conversation and would show that "the acts of Brown were ratified," the court's ruling would nevertheless not have been erroneous. But we find no statement in the record such as defendant's attorney in argument to us asserts he made.

Complaint is also made that the trial judge did not accord plaintiff a fair trial and that he was not impartial and unbiased but biased and prejudiced, as shown by the record, in his rulings. This charge made of record is too serious for us to pass it by in silence. It is true that some impatience on the part of the trial judge, which should not have existed, is disclosed by the record occasioned, doubtless, by the persistence with which plaintiff's attorneys pressed such questions as the one we have just considered. But there is absolutely nothing in the record to indi-

cate bias, passion or prejudice on the part of the trial judge. The rulings he made were eminently fair and correct.

The record discloses no error upon which the judgment can be reversed and it is therefore affirmed.

*Affirmed.*