## J. C. Osgood

*v.*

## John Skinner *et al.*

211   229
214  ¹596
f214  ¹597

*Opinion filed June 23, 1904—Rehearing denied October 15, 1904.*

1. CONTRACTS—*when an agreement is not a gambling contract.* An agreement by the purchaser of property, who turned in certain shares of stock as part of the purchase price, to purchase such stock at par value, upon written notice, on or before a certain date, is not an option or gambling contract, within the meaning of section 130 of division 1 of the Criminal Code.

2. SAME—*when formal tender of performance is unnecessary.* Formal tender of shares of stock by the proposed vendor to the proposed vendee is unnecessary to fix the liability of the latter for breach of his contract to buy, where, before the time, he declares his intention not to perform his agreement or refuses to perform it.

3. SAME—*refusal to perform need not be made to other party personally, to excuse tender.* To excuse formal tender of shares of stock by the proposed vendor the refusal of the vendee to perform need not be made to the vendor personally, it being sufficient if made to one acting for him in the transaction.

4. SAME—*when contract contemplates concurrent acts.* A contract for the purchase of shares of stock upon written notice on or before a certain time contemplates that the transfer of the stock and the payment therefor shall be concurrent, and in such case it is sufficient to put one party in default if the other is ready, willing and offers to perform his agreement according to its terms.

5. PARTIES—*when suit is properly brought as a joint action.* An action to recover on a joint executory contract under seal to re-purchase certain shares of stock is properly brought as a joint action, although, by reason of performance by the purchaser as to one of the plaintiffs, the recovery is for the benefit of the other alone.

6. VARIANCE—*when objection to evidence cannot be urged on appeal.* An objection that evidence of defendant's repudiation of the contract sued upon was admitted without a proper averment in the declaration cannot be urged on appeal, where there was no objection upon that ground, or the ground of variance, in the trial court.

7. EVIDENCE—*when evidence in repudiation of contract is admissible.* In an action upon a joint executory contract, evidence of repudiation of the contract by the defendant to one of the plaintiffs is admissible in favor of the other, if there is evidence tending to show the one to whom the repudiation was made was acting for both.

8. SAME—*when oral evidence is not admissible.* A written contract which purports to be a complete and final statement of the entire transaction is the only evidence of its terms and conditions.

9. SALES—*remedies of seller where purchaser refuses to accept property.* Where the proposed purchaser of shares of stock has refused to perform his contract, the seller, who has offered performance, may consider the shares of stock as the purchaser's, and may either sell them and sue for the unpaid balance of the price, or hold them subject to the purchaser's order and recover the whole price.

10. APPEALS AND ERRORS—*court is only required to give or refuse such instructions as are asked.* A party cannot complain that the court failed to instruct the jury as to the law unless instructions for that purpose were prepared and tendered.

*Osgood* v. *Skinner,* 111 Ill. App. 606, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

PECK, MILLER & STARR, and CHESTER M. DAWES, for appellant.

JOHN S. WINTER, CRATTY BROS., JARVIS & LATIMER, and CHESTER E. CLEVELAND, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The parties to this suit entered into a contract dated July 28, 1890, by which the appellees, John Skinner and William Emerson, agreed to sell to the appellant, J. C. Osgood, certain property described in the contract, known as the Liverpool Railway Company, the Dunfermline coal mine and equipment, including store buildings, miners' houses, leases, stock of goods, etc., in Fulton county, and appellant agreed to pay appellees $10,000 in cash and give his two promissory notes for $12,500 each, and transfer to them six hundred and fifty shares of fully paid, non-assessable capital stock of the Whitebreast Fuel Company, of the par value of $100 each, together with an agreement obligating himself to purchase from them the stock so transferred to them as part compensation for their property, provided they should elect to sell said stock by written notice to him on or before

August 1, 1891, in which case he would receive and pay for said stock its par value on or before October 1, 1891. On August 1, 1890, said parties performed said contract, and an agreement between them was then executed under seal, reciting the conveyance and transfer of the property by appellees to appellant, and the delivery to them, in part payment for the same, of said six hundred and fifty shares, of the par value of $100 each, of the fully paid, non-assessable stock of the Whitebreast Fuel Company, and concluding with the following agreement of the appellant:

"Now, therefore, in consideration of the foregoing, said first party does hereby agree and obligate himself to purchase from said second parties the above described six hundred and fifty (650) shares of stock, and pay for the same at par on or before the first day of October, 1891: *Provided, however,* that said second parties shall first notify said first party, in writing, at his office at No. 18 Broadway, in the city of New York and State of New York, on or before the first day of August, 1891, of their election to sell said stock to said first party hereunder.

"It is agreed that time is of the essence of this contract, and that unless written notice, as above set forth, is served by said second parties, or their agent duly authorized, on said first party, then said first party shall be relieved from any and all obligations to purchase said stock from said second parties hereunder.

"Witness the hands and seals of the parties hereto, this first day of August, A. D. 1890.     J. C. OSGOOD,          (Seal.)
                                      WILLIAM H. EMERSON,    (Seal.)
                                      JOHN SKINNER.          (Seal.)
Witness:  GLENN W. TRAER."

The six hundred and fifty shares of stock were transferred to appellees in severalty, in equal shares, three hundred and twenty-five shares to appellee Emerson and three hundred and twenty-five shares to appellee Skinner. On August 27, 1890, the appellant, in reply to a letter of the appellee Emerson, stated that it was his understanding that under the agreement he would buy the stock of either appellee, should one wish to sell and the other not, and that the letter could be attached to

the contract. Appellant refused to perform his contract so far as the stock of appellee Skinner was concerned, and this suit was brought in assumpsit by attachment, in the name of appellees for the use of the appellee Skinner, to recover the contract price. There was a verdict and judgment for the price agreed to be paid, together with interest, after deducting dividends on the stock received by appellee Skinner. The Branch Appellate Court for the First District affirmed the judgment.

On the trial the defendant requested the court to direct a verdict in his favor, and the refusal of the court to do so is assigned as error. In the argument several reasons are presented for the request to direct a verdict. The first is, that the contract was void, under section 130 of division 1 of the Criminal Code, as a gambling contract. That section provides as follows: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity, stock of any railroad or other company, * * * shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered as gambling contracts, and shall be void." (1 Starr & Cur. Stat. 1896, p. 1295.)

It is the duty of courts to enforce contracts or award damages for their breach, and it is generally sufficient to authorize a recovery if the evidence shows that one capable of contracting has entered into an agreement upon sufficient consideration. Such a contract is not to be strained for the purpose of bringing it within a criminal statute, and it is clear that this contract contained no gambling element. The stock was turned over by defendant to the plaintiffs with a distinct agreement that they should have the right, by giving notice on or before August 1, 1891, to return it and receive its par value in money. It was not the intention to contract for a mere option or privilege to sell stock at a future time or to

gamble upon the future price of the stock. The plaintiffs received the stock on condition that they should have the par value of it if they so desired, and the evident purpose was to guarantee a certain value to the stock which they received for their property. It is only contracts for an option and of the nature of gambling contracts which come within the meaning of the Criminal Code. The contract was not a gambling contract or one prohibited by law. *Minnesota Lumber Co.* v. *Whitebreast Coal Co.* 160 Ill. 85; *Ubben* v. *Binnian*, 182 id. 508; *Wolf* v. *National Bank of Illinois*, 178 id. 85; *Loeb* v. *Stern*, 198 id. 371.

The next reason alleged is, that the plaintiff Skinner, for whose use the suit was brought, did not perform the contract on his part, in failing to tender the shares of stock to the defendant. The evidence on that subject was, that both plaintiffs elected to sell their stock to the defendant, and delivered their certificates to the American Trust and Savings Bank of Chicago, accompanied with their power of attorney, authorizing the bank to give to defendant the notice provided for by the agreement. On July 7, 1891, G. B. Shaw, president of the bank, wrote a letter addressed to the defendant at his office at No. 18 Broadway, New York City, which was duly received, stating the contract, giving the numbers of the certificates and the number of shares in each and notifying defendant of plaintiffs' election; that they desired him to purchase and pay for the stock according to his contract, and also notifying him that the certificates would be forwarded to him through the National Bank of the Republic, the correspondent of the American Trust and Savings Bank in New York City. On September 17, 1891, the certificates of Skinner were sent to the National Bank of the Republic, assigned to the cashier of that bank, to be assigned and delivered to the defendant. On the same day the plaintiff Emerson met the defendant in Chicago, when the defendant said that he repudiated the contract and would not be bound by it; that he would

not perform it because Skinner had violated an oral contract with him, and that contracts of that character were unlawful, being optional contracts. He had also told Glenn W. Traer that the contract was void; that he was not legally bound, and was not morally bound because Skinner had violated an oral agreement with him. The defendant settled with Emerson and took his stock, but he did not perform his agreement to purchase and pay for the stock of Skinner, and it was re-assigned by the cashier and returned on November 25, 1891. The argument is that the failure to present the certificates of stock to the defendant personally was fatal to the right of recovery.

Whatever the rule may be as to the sort of tender required under a contract to purchase shares of stock, the law does not require a needless formality, and an actual tender is unnecessary where the seller is ready, able and willing to perform on his part and the tender would be a mere useless form. If, before or at the time of performance, the purchaser has declared his intention not to perform or refuses to do so, the seller need only prove that he was ready and willing to perform on his part. (*Lyman* v. *Gedney*, 114 Ill. 388; *Scott* v. *Beach*, 172 id. 273; *Loeb* v. *Stern, supra.*) It is clear that the contract would not have been performed on the part of the defendant if the certificates had been actually handed to him, and that he had determined and announced his determination not to comply with the contract. This is not denied, but it is urged that the declaration was not to the plaintiff Skinner, and that there is no evidence it was communicated to him or that he acted upon it. The repudiation by the defendant was of the whole contract as a void and illegal one, and the evidence was that the plaintiff Emerson went to the defendant to see about the contract, in which he was interested to the same extent as the plaintiff Skinner. On the motion to direct a verdict, everything which the evidence fairly tended to prove in favor of the plaintiffs was conceded, and it was a fair

inference that Emerson was acting for Skinner as well as himself. If it makes any difference whether the repudiation of the contract or the refusal to perform it by the defendant was to Skinner or one acting for him, it cannot be said that there was no evidence tending to prove that Emerson was acting for both parties to the contract. At the interview the defendant agreed to take the stock of Emerson, and on the same day the American Trust and Savings Bank, under its power of attorney, assigned and forwarded the certificates owned by Skinner to the National Bank of the Republic. The evidence tends to prove that Skinner knew of the refusal of the defendant to perform his contract and had the certificates forwarded in view of it.

We are also of the opinion that the offer to perform the contract was sufficient. The transfer of the stock and the payment for the same were intended to be mutual and concurrent acts, and it was not contemplated that either party should perform some act as a condition precedent to the act of the other. If a contract calls for successive acts, first by one party and then by the other, there is no breach by one if the precedent act has not been performed by the other; but if the contract contemplates concurrent acts, it is sufficient to put one party in default that the other party is ready, willing and offers to perform his part of the contract. A tender, as applied to such a case, does not mean the same kind of offer as the tender of money in payment of a debt, where the money is offered to the creditor unconditionally and the transaction is completed and ended. It means an offer accompanied with ability to do the act required of one party provided the other will concurrently do what he is required to do. (*Clark* v. *Weis*, 87 Ill. 438; *Manistee Lumber Co.* v. *Union Nat. Bank*, 143 id. 490.) There must be an actual tender or offer to perform unless the other party has refused to perform, when an actual offer need not be proved and a mere readiness and willingness to perform

is sufficient. It was incumbent on the plaintiffs to prove that they offered a transfer of the shares to the defendant provided he would take and pay for the same according to the contract, if he had not repudiated it, and in this sense they were bound to make a tender of the shares; but the payment and transfer were to be simultaneous, and they were not bound to make a tender in the sense of offering the stock unconditionally. What they did was to notify him on July 7, 1891, of their election, which was the first step to be taken under the contract. The defendant then became bound to take the stock and pay for it at par on or before the first day of October, 1891. The stock was sent to the National Bank of the Republic, in New York City, where the defendant's office was, and the stock was ready for him at that place if he would perform on his part. The plaintiffs could not put the defendant in default by merely proving that Skinner was ready and willing to transfer the stock to him, but the defendant was notified that the stock would be sent to New York, where it was actually sent, and he was called upon to perform his obligation to purchase it and pay for it at par. The notice of plaintiffs' election was a condition precedent, but that was given according to the contract, and we regard the offer of performance, coupled with ability to perform, as sufficient to put the defendant in default.

It is next claimed that there could be no recovery because the notice of election to sell the stock was insufficient. The notice was received by the defendant, and it recited his contract to purchase the six hundred and fifty shares of stock originally given to the plaintiffs in partial payment for the purchase of the mining property. It gave the numbers of the certificates and the shares in each, amounting in the aggregate to six hundred and fifty, and notified the defendant to purchase and pay for the same; but in one place the number was given as six hundred and twenty-five, which was plainly a mere acci-

dental error, and could not and did not mislead the defendant. No complaint was made of the notice, but after the receipt of it the defendant repudiated the contract upon another ground. The notice was sufficient, and the refusal to perform the contract was not based on the defect now alleged, but on the grounds that the contract was an unlawful and gambling contract and that Skinner had violated an oral agreement.

It is next urged that plaintiffs could not jointly recover the judgment for the use of Skinner, and that the suit should have been in his name alone. If there were any merit in the objection it could not now be urged, for the reason that it was not presented in any manner to the trial court, where an amendment could have been made. Moreover, the objection would not have been a good one. The contract was under seal and the legal right of action was in the plaintiffs. The defendant took the shares which he had transferred to Emerson and refused to take the shares transferred to Skinner. The action at law in the name of both the plaintiffs was proper although the recovery was for the benefit of Skinner alone. None of the reasons given would have justified the court in directing a verdict for the defendant.

It is next argued that the court erred in ruling on the admission and exclusion of evidence, and one question under that head, relating to the validity of the contract, has already been considered. Another complaint is, that the court admitted evidence of the repudiation of the contract by the defendant without any averment in the declaration under which it was admissible. There was no objection to the evidence on the ground of variance or for the want of a proper averment in the declaration, and the objection cannot be made in this court. If it had been made at the trial the pleadings might have been amended to meet the objection. A further objection is that the refusal to perform was to a stranger to the transaction and that it was not communicated to Skinner.

The contract was a joint, executory contract with Emerson and Skinner, and the repudiation was to Emerson, one of the plaintiffs, in whom the legal right under the contract existed. As already said, the evidence would justify an assumption that Emerson was acting for both, and whether he was or not was a question for the jury.

The next proposition is, that the court excluded evidence of an oral agreement alleged to have been made by Skinner and Emerson with the defendant at the time the contract was delivered, that they would not for ten years thereafter engage in the coal mining business on that branch of the Burlington on which the coal mine was situated. The excluded evidence was to the effect that the defendant did not understand or intend to make a legal or binding agreement to that effect, but that he asked for the word of honor of plaintiffs, as business men, that they would not engage in the business; that he said he would be satisfied with their word of honor, and that the promise was intentionally omitted from the written contract. He did not regard the promise as a contract, and the presumption of law that it was intentionally omitted from the contract was established by the evidence as a fact. The written contract purported to be a complete and final statement of the whole transaction, and where there is such a contract it affords the only evidence of its terms and conditions. *Lane* v. *Sharpe*, 3 Scam. 566; *Cook* v. *Whiting*, 16 Ill. 480; *Marshall* v. *Gridley*, 46 id. 247; *Town of Kane* v. *Farrelly*, 192 id. 521.

There are objections to the action of the court in refusing instructions tendered by the defendant which are answered by what has been said, except as to the measure of damages. The first instruction so refused directed the jury that if they found the issues for the plaintiffs there could be a recovery of no more than nominal damages. It is insisted that the measure of damages for the breach of the contract to purchase was the difference between the market value of the shares of stock at the

time and place of sale and the contract price, and, there being no evidence of market value, the damages were merely nominal. It is contended that there can be a recovery of the contract price only where the title has passed, and that the title to the shares of stock never passed to the defendant by actual delivery to him of the certificates, but that the title and possession remained in Skinner. We do not think that an actual delivery of the certificates or an acceptance of them by the defendant was necessary to the recovery. It was doubtless intended by the parties that the contract should be performed by delivering certificates of stock duly endorsed and with a power of attorney to complete the transfer, so as to enable the defendant to obtain a registry of his title on the corporate books, but there was no obligation to make such a delivery of the certificates without payment. Skinner had a right to retain his certificates until payment, which was to be made upon delivery. A stock certificate is not the stock itself, but it affords to the holder the evidence of his rights and enables him to obtain a transfer on the books of the corporation. The assignment and delivery of certificates constitute a symbolical delivery of the shares. The certificates remained in the hands of Skinner, but he was not for that reason obliged to consider them as his own. If there has been no delivery of personal property, the seller who has offered performance on his part may consider the property as the purchaser's, and may either sell it and sue for the unpaid balance of the price, or may hold it subject to the call or order of the purchaser and recover the whole price. (3 Parsons on Contracts,—5th ed.—p. 209.) The difference between the contract price and the market value at the time and place of delivery is a proper measure of damages for a failure to receive personal property, and in very many cases the suits have been brought for such damages. The seller often chooses to retain the title to the property and recover the difference be-

tween the value and the contract price, but if the property remains in his hands he is not obliged to consider it as his own. The rule of this court has been that the vendor may elect to sue for damages or to treat the property as the property of the vendee, notwithstanding a refusal to accept it, and sue upon the contract for the whole contract price. In *Bagley* v. *Findlay,* 82 Ill. 524, it was said that when a vendee of goods sold at a specific price refuses to take and pay for the goods, the vendor may store them and give notice that he has done so and then recover the full contract price, or he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery. In *Ames* v. *Moir,* 130 Ill. 582, it was held that the vendor has three remedies: First, to store the goods for the vendee, give notice that he has done so and recover the full contract price; second, to keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery; and third, to sell the goods at a fair price and recover from the vendee the loss if the goods fail to bring the contract price. The authorities are not uniform on that subject, but the rule stated is the one adopted by this court, and under it there was no error in refusing the instruction. The certificates for shares of stock were placed at the disposal of the defendant if he would pay for them, and Skinner had a right to treat them as his property. They were so treated and were tendered to the defendant on the trial.

No instructions were asked on the part of the plaintiffs, and the court having refused the instructions asked for by the defendant, no instructions were given. It is assigned for error that the court erred in failing to instruct the jury as to the law, but the only duty of the court is to give or refuse such instructions as are asked by the parties. (*Drury* v. *Connell,* 177 Ill. 43.) Parties have the privilege of tendering such instructions concerning

the law as they may deem necessary, and the Practice act requires the court to mark them as given or refused, but only authorizes exceptions to the giving or refusing of an instruction. The court may modify or qualify an instruction as tendered and a party may except to the refusal to give it as asked, and the court may also give instructions without request. A party cannot complain that the court has not given an instruction unless it has been prepared and tendered for that purpose.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*