North Shore Lumber Company, Appellee, v. South Side Lumber Company, Appellant.

## Gen. No. 16,747.

1. EVIDENCE—*agreement prior to written contract.* A contract providing for the sale of specified lumber at a certain price, delivery on dock by plaintiff, shipment and payment by defendant at certain times, is complete, and in an action for the price evidence is not admissible concerning an alleged previous oral agreement by plaintiff that defendant might carry the lumber on a certain barge and that plaintiff would dredge the harbor so that a full cargo could be taken.

2. CONTRACTS—*written or oral.* Whether the parties to a written contract intended to embody the whole contract in the writing is to be determined in the first instance from an inspection of the writing.

3. EVIDENCE—*agreement prior to written contract.* Where by a written contract defendant is under an unqualified obligation to

ship lumber at certain times after it is piled on the dock, evidence to the effect that by a previous oral agreement such lumber need not be taken away until the harbor is dredged to accommodate a certain barge is inadmissible.

4. CONTRACTS—*construed*. Where lumber piled on a dock, and some to be thereafter sawed and piled there, is sold under a contract providing that "lumber to be carried on the docks ninety days, provided we have room, if not, there should be enough of said lumber moved after being sixty days in pile to give us the room," such provision for removal applies to the lumber then on the dock as well as that to be sawed.

5. CONTRACTS—*extension of time where performance delayed by buyer*. Where the seller's failure to have lumber in pile at the time specified in the contract is due in part to the buyer's failure to remove certain lumber as agreed, the seller is entitled to a reasonable extension of time.

6. CONTRACTS—*waiver of notice of breach*. Where the seller gives the buyer notice before time for complete performance that the lumber contracted for cannot be delivered on the date specified, the contract is kept alive for the benefit of both parties if the buyer shows no intention to treat the notice as a breach but announces an intention to take certain lumber to which it has no right unless the contract is still in force, and insists on its right to have the contract quantity delivered.

7. CONTRACTS—*when divisible*. Where a contract for the sale of lumber provides, "Terms 2% off in ten days or sixty days' acceptance; lumber to be shipped sixty days from completion of each one-half million sawed," and is for delivery of two and one-half million feet within a certain time, the contract is divisible and the buyer's promise is to pay for each separate shipment and not when the two and one-half million feet is delivered.

8. CONTRACTS—*set-off*. In an action for the price of lumber delivered under a contract, defendant, to maintain a claim of set-off, must show that he is not in default on such contract; and to recoup, the burden is on him to prove that he is not in default and that plaintiff failed to perform.

9. DAMAGES—*measure of*. The measure of damages for breach of contract to deliver lumber at a certain place at a certain time is the difference between the market price and the contract price at the place of delivery, and if no market there then at the nearest market with freight therefrom, with compensation for time, trouble and expense involved in procuring the lumber.

Appeal from the Municipal Court of Chicago; the HON. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed December 30, 1912.

Edward Maher and Robert F. Kolb, for appellant.

Herrick, Allen & Martin and Frank E. Harness, for appellee.

Mr. Justice Baker delivered the opinion of the court.

This action was for the price of a cargo of maple lumber delivered by the plaintiff, the North Shore Lumber Co., to the defendant, the South Side Lumber Co., on plaintiff's dock at Thompson, Michigan, August 25, 1908, pursuant to the following contract:

"Chicago, Ill., Feb. 20th, 1908.

South Side Lumber Co.,
    Chicago, Ill.
Gentlemen:

We propose to sell you our 1908 season's cut up to Sept. 1st of hard maple lumber estimated to be three million feet including 700 M. now on dock to be principally cut to 4/4, cutting what thicker you may require to be delivered on dock not more than two piles deep at Thompson, Mich., including about 700 M. of dry maple now on our docks, and including about 75 M. strips at the following prices:

| First and Seconds, | $22.00 per M. |
| No. 1 Common, | 16.00 per M. and |
| No. 2 or shipping culls, | 12.00 per M. |

Terms 2% off in 10 days or 60 days' acceptance; lumber to be shipped 60 days from completion of each ½ million sawed. Lumber to be inspected by J. S. Coman, Menominee, Mich., or some other competent inspector mutually agreed upon, each party to pay one-half the inspection fees and said lumber to be inspected according to National Hardwood Lumber Association Inspection of 1907. Lumber to be carried on the docks 90 days, provided we have the room, if not, there should be enough of such lumber moved after being 60 days in pile to give us the room.

It being particularly understood that we will deliver you by Sept. 1st not less than 2½ million feet and up to 3 million feet if possible, including the 700

M. dry now on dock, and all lumber to be in pile not later than September 1st, 1908, and all such lumber to be removed before the close of navigation or settled for by Dec. 1st, 1908.

The North Shore Lumber Co.,<br>By A. M. Chesebrough, Secy.

Accepted South Side Lumber Co.

By J. J. Nichols.''

The contract price of the cargo was $3,123.14, and the judgment was for that sum and interest.

The contention of the appellant is that the plaintiff failed to keep and perform the contract, and that thereby the defendant sustained damages which it had the right to recoup or set off against the claim of the plaintiff for the price of the cargo. As a basis of this contention it is claimed that before the contract was signed the parties agreed orally that the defendant should have the right to carry the lumber in its barge, the Sawyer, and that the plaintiff should dredge the harbor at Thompson so that the Sawyer could take away a full cargo.

The contract is complete as written and does not include either an agreement that the defendant should have the right or privilege to carry the lumber by the Sawyer, or any agreement that the plaintiff should dredge the harbor at Thompson so that the Sawyer could carry away a full cargo. No oral evidence of the previous negotiations is admissible to show what the contract was, unless it appears that the writing was not intended to embody the whole contract, and the question whether the parties intended to embody the whole contract in the writing is to be determined in the first instance by an inspection of the writing itself, and not otherwise. Telluride Power Transmission Co. v. Crane Co., 208 Ill. 218; Osgood v. Skinner, 211 Ill. 229; Schneider v. Sulzer, 212 Ill. 93; Seitz v. Brewers' Refrigerating Mach. Co., 141 U. S. 510.

In the case first cited it was said: ''The questions as to what writings should be considered, and whether

or not those considered constituted a written contract, and whether or not the written contract fully expressed the agreement between the parties, were for the court. The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard."

We are clear that evidence tending to show the alleged independent collateral contract was inadmissible.

Again, by the terms of the writing the defendant was obligated to ship the lumber at certain specified times after it had been piled on the dock. Its duty to take away the lumber according to such provisions was, under the terms of the writing, absolute and unqualified. Evidence to show that it was not bound to take away lumber, no matter how long it had been piled on the dock, until the harbor was so dredged as to accommodate the Sawyer, was evidence tending to vary and contradict its own written undertaking, and for that reason was inadmissible. Ryan v. Cooke, 172 Ill. 302.

A further contention of the defendant is that it was not, under the contract, obligated to take from the dock any part of the 700,000 feet of dry lumber on the dock when the contract was made until the close of navigation. The contract provides that, "Lumber to be carried on the docks ninety days, provided we have the room, if not, there should be enough of said lumber moved after being sixty days in pile to give us the room."

We concur in the conclusion stated by the learned trial judge that this provision applies to the 700,000 feet then on the dock, as well as to lumber sawed after

the contract was made; that the defendant was bound to ship the 700,000 feet of lumber whenever after the expiration of sixty days from February 20 the plaintiff needed the room which it occupied, and in any event was bound to ship said lumber in ninety days from February 20.

The lumber first taken by the defendant from the dock was the cargo of 161,054 feet taken June 23, and the next was the cargo of 202,515 feet taken July 14. This delay was not caused by any fault or omission on the part of the plaintiff, and because of it the plaintiff was hindered and delayed in the manufacture of lumber under the contract. June 3 it was compelled to shut down its mill because its piling space was filled, and it did not resume operation until shortly after July 4. If the 700,000 feet of dry lumber in question had been removed by defendant before June 3, the plaintiff could have run its mill fifteen working days, or allowing for Sundays, two weeks and a half longer than it did. The failure of the plaintiff to have not less than two and one-half million feet in pile by September 1 was caused in part by the defendant's delay and default in removing the dry lumber from the dock, and the plaintiff was entitled to a reasonable extension of time in which to saw and pile the remainder of the lumber. T. Wilce Co. v. Kelley Shingle Co., 130 Mich. 319; Tyers v. Rosedale Ferry Hill Co., L. R. 10 Exch. 195.

August 26 the plaintiff wrote the defendant it could not from its plant get out two and one-half million feet during the shipping season. When a party to a contract receives notice of an intended breach by the other party, he may either act on it immediately and refuse to be further bound by the contract, or he may disregard it and treat the contract as still unbroken and in full force and effect.

In Kadish v. Young, 108 Ill. 170, the supreme court stated the rule as follows, quoting from the opinion of Cockburn, C. J., in Frost v. Knight, L. R. 7 Exch.

111: "The promisee, if he pleases, may treat the notice of intention (*i. e.*, not to perform the contract) as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it."

The defendant on the receipt of the letter of August 26 manifested no intention to treat the notice contained in it as a breach of the contract. Its next letter demanded how much lumber was in pile. On September 14, in the letter in which it announced its intention to withhold payment for the last shipment, and also on September 21 and 26 when it announced its intention to take the lumber which was in pile in August, which it could not possibly have any right to do unless the contract was still in force, and throughout the correspondence it was insisting on its right to have the full contract quantity of lumber delivered. This conduct "kept the contract alive for the benefit of the other party" and enabled the plaintiff "to take advantage of any supervening circumstances which would justify him in declining to complete it." Frost v. Knight, *supra*. Payment for the cargo taken from the dock by the defendant August 25 came due September 4. The defendant had by its conduct kept alive the contract for the benefit of the plaintiff, as well as its own. The contract between the parties is a divisible, separable or apportionable contract. The promise of the defendant was not a promise to pay for the lumber when the full amount of 2,500,000 feet was delivered, but a promise to pay for each separate shipment. "Confusion is often caused by failure to observe the

distinction between several contracts and a divisible, separable or apportionable contract. An apportionable contract enables a certain part of the payment or performance on one side to be recovered before the whole consideration has been given by the other side, but there is nevertheless but a single contract." Parsons Cont. (9th Ed.), 673.

We concur in the finding of the trial court that up to September 4 there had been no breach of the contract on the part of the plaintiff, and that the failure of the defendant to pay for the cargo of August 25 was a breach of the contract on its part, and that because of such breach it could not maintain an action to recover damages for the failure of the plaintiff to fully perform its part of the contract. To maintain its claim of set-off the defendant must show that it was not in default as to the contract on which it based its claim and to recoup the burden was on it to prove that the plaintiff had failed to perform the contract, and that it was not itself in default as to that contract. Harber Bros. Co. v. Moffat Cycle Co., 151 Ill. 85; Pennsylvania Coal Co. v. Ryan, 107 Ill. 226; Bradley v. King, 44 Ill. 339.

In the case last cited where one million feet of lumber was purchased to be paid for as delivered, and the purchaser accepted a cargo some time after it should have been delivered, it was held that such acceptance placed the purchaser under the same obligation as to payment as he would have been had the lumber been delivered and accepted within the time stipulated in the contract, and if the purchaser refused to perform the obligation on his part, the vendor was excused from further performance. Because the evidence shows that the defendant was in default as to the agreement on which it based its claim of set-off and its right of recoupment, it failed either to maintain its claim of set-off or to prove any right of recoupment.

There is another ground on which the judgment must be affirmed. The contract provided that all the

lumber should be in piles by September 1. If there was a breach of the contract by the plaintiff, it occurred at that time. The defendant offered no evidence tending to show that the lumber could not then have been obtained in the market. Its claim is that it does not appear that the lumber could have been obtained in the market October 3 or 13, when it first knew that the plaintiff would not furnish the remainder of the lumber it was required by the contract to furnish. The evidence relied on as showing damages is evidence tending to show loss of profits. We concur in the finding of the trial court, "that the evidence fails to establish that defendant had sustained such damages by delay or failure to deliver at that time or at any time; the court finds that from the evidence that there was a market and supply of hard maple lumber such as contracted for from September 1 to December 1 or close of navigation, 1908, and holds that the measure of damages, if any, for a breach, if any, on the plaintiff's part of this contract to deliver would have been the difference between the market price and the contract price at place of delivery, and if no market there, then at nearest available market with added freight and compensation for time, trouble and expense involved in procuring the goods from such market and that the loss of profits contended for is not the measure of damages where there is a market and a market value."

Finding no error in the record, the judgment is affirmed.

*Affirmed.*