## Herbert A. Baker, Appellee, v. Fred A. Ellis, Appellant.

## Gen. No. 31,319.

1. VENDORS AND PURCHASERS—*when lease and option constitute single instrument.* A lease and supplemental agreement giving an option to the lessee to buy the leased premises upon certain conditions, signed by the lessee before delivery to the lessor who, after signing both at the same time returned them, constitute a single agreement.

2. VENDORS AND PURCHASERS—*repudiation of contract by vendor as waiving necessity for complete tender by purchaser.* After an optionee has offered to do, and shown his ability to do, all required of him in order to carry out his election to avail himself of the option to buy' certain premises on certain terms, and in accord therewith has presented a certified check for the amount of the cash payment called for in the option agreement, and the optionor has refused to perform and has repudiated the contract, it would be a vain requirement to call for actual and fully valid tender before the optionee can sue to recover damages for the optionor's breach of the agreement.

3. VENDORS AND PURCHASERS—*when purchaser's inability to ascertain exact amount excuse for incomplete tender.* An optionor who refuses to disclose figures solely in his possession and necessary to arrive at the amount needed to make a cash tender under an option for purchase of realty and refuses to take such tender if it is made, cannot demand the actual tender of the amount named in the option before the optionee shall have the right to sue for damages for the optionor's breach of the agreement.

4. VENDORS AND PURCHASERS—*lease and option as supported by one consideration.* Where a lease of property and an option to the lessee constitute a single contract, it is not error, in an action to recover for breach thereof, to exclude evidence tending to show that there was no consideration for the option.

5. APPEAL AND ERROR—*when giving of erroneous instruction not ground for reversal.* Although an instruction that the optionor in a land option was guilty of an "omission" to carry out his part of the contract was erroneous in that plaintiff claimed damage for refusal and not omission, the error was not reversible, as the jury could not have been mislead, in absence of any evidence or claim by optionee of liability from mere omission except as the result of the refusal to give a deed.

6. Instructions—*propriety of refusal where based on wrong theory.* Instructions offered were rightly refused as based on a wrong theory of the case, which were predicated on the necessity and failure to make tender by optionee under a land purchase option requiring a cash payment, whereas the optionee based his right to recover damages upon optionor's breach of the contract irrespective of tender.

7. Appeal and error—*when improper argument is not ground for reversal.* The statement of counsel to a jury as to what the Supreme Court had said about an attorney in a case testifying for his client while improper is not such prejudicial error as to require reversal for overruling the objection thereto.

8. Vendors and purchasers—*when evidence of value of other property inadmissible.* In determining damages for refusal to convey realty, the admission over objection of evidence of the value of property five blocks away without proof of any similarity in location or character was erroneous.

9. Vendors and purchasers—*when listed price of property not proof of value.* Evidence that a defendant, in a suit to recover damages for refusal to convey realty, had listed the same at a certain price with a broker should not have been received as showing an admission of the fair market price of the land.

10. Appeal and error—*remittitur as condition of affirmance.* If improper evidence is admitted on the fair market value of land for refusal to convey which defendant was sued for damages, the Appellate Court will make remittitur on the verdict found by the jury down to a fair figure on penalty of reversing the judgment for plaintiff.

Appeal by defendant from the Superior Court of Cook county; the Hon. Timothy D. Hurley, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed on condition of remittitur; otherwise reversed and remanded. Opinion filed May 17, 1927. Rehearing denied May 28, 1927.

Taylor, Miller, Dickinson & Smith, for appellant; Preston Boyden, John S. Miller and James J. Magner, of counsel.

Heth, Lister & Collins, for appellee.

Mr. Justice Barnes delivered the opinion of the court.

This is an appeal from a judgment for $10,623 for alleged breach of contract by defendant in refusing

to carry out his agreement giving plaintiff an option to purchase certain real estate.

Defendant and his wife are owners in joint tenancy of the real estate in question. Defendant leased the premises to plaintiff for a period of three years from May 1, 1921. The lease was dated March 22, 1921, and a "supplemental agreement to the lease," bearing the same date, was attached to the lease as a part thereof. Said agreement gave plaintiff an option to purchase said premises at any time during the term of the lease, for the purchase price of $20,000, one-half to be paid in cash (subject to certain deductions) and the remainder in the form of a first mortgage, with interest at the rate of six per cent per annum. The agreement provided that defendant would clear the property at such time of any existing incumbrance so that the new mortgage executed by plaintiff would be a first lien on the premises, and it further provided as follows:

"It is further mutually agreed, in case second party (plaintiff) shall exercise said option to purchase, that he shall be allowed by said first party (defendant), on account of above mentioned cash payment of ten thousand dollars, an amount equal to the gross amount of rentals paid to date of purchase less the pro rata cost (to same date) to party of the first part of all taxes, insurance and the interest at the rate of six per cent per annum on the above mentioned purchase price of twenty thousand dollars."

While the testimony bearing on plaintiff's attempt to avail himself of said option is conflicting, the jury must be deemed to have construed it in plaintiff's favor, and as there is no contention that the verdict is against the manifest weight of the evidence, the question of its sufficiency is not before us. Regarding the evidence, however, on review thereof, as sufficient to support plaintiff's version of his attempt to exercise his option, and accepting such version on con-

troverted questions of fact, we need consider only the points of law urged for reversal.

The first three points relate to the doctrine of tender and whether the necessity therefor was dispensed with under the facts of the case. They present the question whether plaintiff's conduct constituted an election to avail himself of the option. The facts bearing on these questions are substantially as follows:

Both the lease and the supplemental agreement were signed by plaintiff before delivery to defendant, who returned them later, signing both at the same time, and show what we think cannot be successfully questioned, that they constitute one agreement. In January, 1924, plaintiff informed defendant that he wished to exercise his option and purchase said property, and was prepared to take care of all the requirements of the option. According to the testimony for plaintiff, defendant then stated that he was not going to convey the property, and that the option was of no value because it was not signed by his wife. Plaintiff expressed his surprise that any question was raised in respect of its validity, and if it was not valid he was willing "to go even farther than the option demanded." Defendant said he would discuss the matter with his wife. In another conversation on February 9, 1924, in the presence of his lawyer and the broker in the transaction, plaintiff informed defendant that he wanted the property conveyed according to the terms of the option, that he was ready, able and willing to take care of all of its conditions, and even willing to do better, that he did not know what the net cost of the property would be under the terms of the option because he did not know what taxes had been paid nor what mortgage existed against the property, and asked defendant to figure it out exactly with him; whereupon defendant said: "I am not going to figure and I am not going to convey that title. * * * My wife won't sign and I won't convey the title." On that oc-

casion plaintiff told defendant that he was willing to
assume the existing mortgage or give a new mortgage,
or pay all cash if defendant desired, whereupon de-
fendant told plaintiff that if he would come back in
about a week he thought the deal could be closed, that
he would look up the mortgage and interest and decide
whether he wanted plaintiff to assume the existing
mortgage or not. As per appointment plaintiff and
his attorney went to defendant's office on February 22,
1924, and met him with his attorney and his son. On
that occasion defendant stated that the deal was not
going to be closed, and defendant's attorney stated
that he had advised defendant that he was in no way
responsible for carrying out the deal. Plaintiff then
again informed defendant that he was ready, able and
willing to meet all the terms of the option, including
the signing of a new mortgage and the notes, and re-
turned in the evening of the same day and again so
informed him, and to evidence his ability to meet the
cash requirements showed defendant a certified check
for $10,000. Defendant refused to discuss the matter
further and said the matter was in the hands of his
attorney. On February 27, 1924, plaintiff wrote de-
fendant a letter repeating in it what had taken place
at these interviews, substantially as above stated, and
demanded performance of the contract according to its
terms, assuring defendant that he was still ready, able
and willing to carry out his obligations under the con-
tract, and adding that he would wait one week from
that date for a further response. None was received.
Again on March 24, 1924, he went to defendant's of-
fice with a witness, and again informed defendant of
his readiness to meet the cash requirement of the op-
tion and to sign notes and mortgage and to carry out
all the provisions of the option, and again showed de-
fendant the certified check above mentioned, and
demanded to know for the last time whether defend-
ant would convey the title to him of the premises in

question. Defendant again stated that he would not do anything, that the matter was in the hands of his attorney.

No question arises as to plaintiff's ability to perform his part of the agreement, and upon these facts it must be held that after plaintiff gave notice of his election, and made an offer to perform accompanied by his ability to perform according to the terms of the contract, defendant not only refused to perform but absolutely repudiated the contract. The sole question, therefore, is whether on such a state of facts plaintiff is excused from going further and making an actual tender before he can recover as for a breach of contract. The declaration as amended is predicated on the theory he can, and not upon an actual tender by plaintiff. It was not demurred to, but issue was taken thereon, and we think it states a good cause of action.

Appellant argues in effect that such theory of the cause of action is untenable, that a complete tender of the amount of cash required and of executed notes and a mortgage for the balance was requisite to an exercise of the option, that such acts of tender were conditions precedent to such exercise. The cases cited by defendant on the point do not present a state of facts where, as here, after the optionee had offered to do, and demonstrated his ability to do, all that was required of him in order to carry out his election to avail himself of the option, the optionor refused to perform, and repudiated the contract. Surely it would have been a vain, useless thing to have tendered the actual cash necessary and a mortgage and notes duly executed, when defendant in unmistakable language expressed his intention not to accept them. The principle that the law does not require a vain and useless act would seem to apply to such a state of facts. Had plaintiff merely given notice of his election without an offer to perform accompanied by his ability to perform, or if by the terms of the option agreement it was

a condition precedent to the exercise of the option that the actual cash be paid and the notes and mortgage for the balance of the purchase price be executed and tendered, a different question might arise. But the facts are otherwise and we do not so construe the contract. The exact amount of cash to be paid could not be determined without ascertaining the sum plaintiff was entitled to have deducted from the $10,000, and the facts necessary to determine the amount were within defendant's and not plaintiff's knowledge, and he refused to disclose them. He alone knew what insurance he had paid.

Appellant has cited the cases of *Longfellow v. Moore*, 102 Ill. 289; *Winders v. Kenan*, 161 N. C. 628; *Pollock v. Riddick*, 161 Fed. 280; *Lockman v. Anderson*, 116 Iowa 236; *Bundy v. Dare*, 62 Iowa 295, and *Killough v. Lee*, 2 Tex. Civ. App. 260, 21 S. W. 970. But they are not strictly in point. In some of them the optionee was clearly in default when the optionor refused to convey. In others there was a mere notice of election without tender of payment, or the tender was too late, as was the case in *Longfellow v. Moore, supra.* No question of waiver of tender arose in those cases. Appellant concedes that the optionor can waive the necessity of tender by his actions, but not where the optionee's claim is based upon a mere notice of election and a statement of readiness, willingness and ability. The argument ignores the fact of defendant's repudiation of the contract after an offer to perform accompanied with ability to perform, and defendant's absolute refusal to convey the property regardless of any question of tender. There could hardly be a more complete waiver than indicated by such an attitude, and hardly a more useless act than an actual tender after such attitude was taken.

After plaintiff gave notice of his election accompanied by his ability to perform, the case was then practically one of mutual and concurrent promises.

Plaintiff was to pay an amount of cash to be determined by information to be furnished by defendant and to execute notes and a mortgage. Defendant was to remove of record a prior mortgage and execute his deed. They were concurrent acts. Plaintiff offered to perform and demanded performance of defendant. The latter not only refused to perform, not questioning plaintiff's readiness and ability, or relying on a want of sufficient tender, but repeatedly repudiated the contract. It must, therefore, be said that plaintiff's offer coupled with his ability to perform constituted all the tender requisite in the face of such refusal and repudiation. (13 C. J. 662–3–4.) As said in *Clark v. Weis,* 87 Ill. 438:

"The word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, and the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness."

This rule has been frequently followed. (*Manistee Lumber Co. v. Union Nat. Bank of Chicago,* 143 Ill. 490; *Osgood v. Skinner,* 211 Ill. 229; *Kopeyka v. Woodstrom,* 305 Ill. 69.) Referring to the rule in *Osgood v. Skinner, supra,* the court said:

"There must be an actual tender or offer to perform unless the other party has refused to perform, when an actual offer need not be proved and a mere readiness and willingness to perform is sufficient." (p. 235-6.)

The court further said what is applicable here:

"The notice of plaintiffs' election was a condition precedent, but that was given according to the contract, and we regard the offer of performance, coupled with ability to perform, as sufficient to put the defendant in default." (p. 236.)

Under the circumstances, we are obliged to hold that the necessity of actual tender was waived. It is obvious that an actual tender would have produced no different result, and the law does not compel the doing of a useless act. (*Osgood v. Skinner, supra; Scott v. Beach,* 172 Ill. 273; *Shultz v. Hamilton,* 223 Ill. App. 64.)

Appellant urges that the court erred in rejecting his offer to prove a conversation had before the instruments in question were drawn and before there was a talk about an option, in which plaintiff said he would pay the amount of rental afterwards provided for in the lease. The contention is that such evidence would tend to show there was no consideration for the option. As before stated the instruments unquestionably constitute one contract and the consideration for the lease furnished the consideration for the option (*Hayes v. O'Brien,* 149 Ill. 403; *Stanwood v. Kuhn,* 132 Ill. App. 466), and as all preliminary talk was merged into the written contract the offer was properly rejected.

Appellant urges that two given instructions disregard the questions of tender, election, and waiver of tender, arguing that tender was necessary, thus raising the same point already discussed. The instructions are expressly predicated on the theory of the action, namely, notice of election, ability of plaintiff to perform, and prevention of performance by defendant. Plaintiff did not claim to have made a tender, and hence it was unnecessary to refer specifically to the question of waiver thereof in addition to what the instruction contains. It contains all the elements of the

cause of action as declared upon. The prevention referred to therein, however, was that of "refusal, inability or omission" to give a deed. The instruction should not have contained the word "omission." But it could hardly have misled the jury as there was no evidence or claim of liability from a mere omission otherwise than as the result of the refusal to give a deed.

Appellant also complains of the refusal to give two instructions offered by him. But they are predicated on a wrong theory of the cause of action, viz, the necessity and failure to make tender, and ignore the real issue in the case. As before stated the action is based on defendant's refusal to perform after plaintiff's notice of election coupled with his ability to perform, and plaintiff did not pretend that he had made a tender. The instructions were properly refused.

Under the sixth point in appellant's brief he has grouped 19 instances of alleged error in the court's rulings, urging that they, at least collectively, should require reversal of the judgment.

We think it unnecessary to consider those bearing on the subjects of tender and consideration in view of what we have already said on those subjects. We shall refer to only such other rulings as are questionable.

One was in overruling an objection to the argument by appellee's counsel to the jury as to what the Supreme Court had said respecting an attorney testifying in the case for his client. While we think the remark should not have been made we do not think it so prejudicial as to make the ruling reversible error.

There were, however, rulings bearing on the question of the market value of the property objected to, the propriety and effect of which are more doubtful. In one instance one of plaintiff's expert witnesses on value was permitted to testify over objection that a piece of property five blocks away sold for $32,500 in 1924. There was inadequate proof to show that the

property so sold was similar in locality and character to the property in question. (*O'Hare v. Chicago, M. & N. R. Co.*, 139 Ill. 151; *Chicago & S. L. Ry. Co. v. Mines*, 221 Ill. 455.) If the jury took its value (which was the highest testified to) into consideration in fixing the value of the property in question it might account for the size of the verdict. While appellant does not specifically argue that the verdict was excessive, the consideration of such an improper valuation might have had that result.

Nor do we think the fact proven over objection, that appellant listed his property with a broker in 1923 at $28,000, was tantamount to an admission that that was a fair market price thereof. It is not unusual for persons desiring to sell their property to list it at a higher price than they expect to get, intending to accept a lower price. The evidence should not have been received. A real estate man familiar with the property in question testified for defendant that its maximum value was $25,000. As figured out by appellee's counsel after making the deductions from the purchase price called for in the agreement, the jury must have estimated the value at $28,408.68 to reach the verdict of $10,623. While there was other evidence for plaintiff that the market value of the property was approximately $30,000, we think in view of the improper evidence received on value that there should be a remittitur down to $7,500, and if the same is made within ten days herefrom the judgment will be affirmed, otherwise it will be reversed and the cause remanded.

*Affirmed in case of remittitur; otherwise reversed and remanded.*

GRIDLEY, P. J., and FITCH, J., concur.