New York Hamilton Corporation, Appellee, v. First Illinois Company, Appellant.

Gen. No. 33,627.

126

Opinion filed April 28, 1930.

JOHN P. BARNES and CLARENCE N. BOORD, for appellant.

SILBER, ISAACS, SILBER & WOLEY, for appellee; MARTIN J. ISAACS and CLARENCE J. SILBER, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit in assumpsit to recover an amount claimed to be due on a written contract. Defendant filed its amended affidavit of defense which, on motion of plaintiff, was stricken for insufficiency of law and judgment was entered for plaintiff in the sum of $8,852.47, from which defendant appeals, presenting in this court only the question of the sufficiency of its amended affidavit of defense.

Plaintiff alleged a written promise by defendant to buy back certain bonds and its refusal to do so and plaintiff sought to recover the contract price. Defendant's affidavit of defense asserted (1) that it did not promise as plaintiff alleged; (2) that the written contract is unilateral and void; (3) and (4) that title to the bonds did not pass to defendant; hence it was liable, if at all, only for damages suffered and not for the purchase price of the bonds.

Does the affidavit of defense sufficiently comply with ¶ 55, chapter 110, Cahill's Illinois Statutes, which provides that plaintiff shall be entitled to judgment, as in case of default, unless the defendant shall file an affidavit that he has a good defense "and specifying the nature of such defense"?

The declaration alleged that on December 17, 1927, in Chicago, the defendant executed a written contract as follows: (The contract was also executed by Link,

Petter & Company, but as this company does not appear in this suit we shall hereafter omit all reference to it.)

"The undersigned, . . . First Illinois Company, for value, hereby deliver to New York Hamilton Corporation, Forty-two thousand five hundred ($42,-500) Dollars principal amount of. . . Bonds of Continental Properties Corporation, and hereby. . . promise to New York Hamilton Corporation and undertake that sufficient principal amount of these bonds will be purchased from New York Hamilton Corporation at the principal value thereof, so as to put New York Hamilton Corporation in funds to pay as they fall due, certain notes of Duncan-Bankhead Company, Inc., to Edwin Dumble Company and certain notes of Henry S. Duncan to Louis Pizitz . . . the said Dumble and Pizitz notes falling due on the following dates and in the following amounts:"

Then follows a list of the notes, with dates of maturity, the first falling due in January, 1928, and one each month thereafter (except September), the last note falling due October 1, 1928. The aggregate amount of these notes is over $42,000. The declaration alleged that by this contract defendant for a good and valuable consideration undertook and promised to purchase from plaintiff bonds of the Continental Properties Corporation sufficient to enable plaintiff to pay from the purchase price thereof the promissory notes as they severally matured, as set forth in the declaration; that said notes were duly paid by the plaintiff at maturity out of its own funds and that defendant has failed to purchase the bonds in amounts sufficient to enable the plaintiff to pay from the purchase price two of the notes due respectively July 1 and August 1, 1928. The affidavit attached to plaintiff's declaration alleged that on and prior to the execution of the contract one Henry S. Duncan

of Birmingham, Alabama, was indebted to plaintiff on obligations guaranteed by plaintiff in a sum upwards of $40,000; that payment thereof was partially secured by the pledge of certain personal property made by Duncan and that defendant, in consideration of the release by plaintiff of the liability and indebtedness of said Duncan and of the surrender of said security (except the liability of Duncan on the several promissory notes mentioned in the contract), then and there delivered to plaintiff bonds of the face value of $42,000, issued by the Continental Properties Corporation and thereupon undertook, promised and agreed to repurchase said bonds at their face value in an amount sufficient to discharge the indebtedness of said Duncan when and as said promissory notes became due and payable, and that thereafter defendant purchased bonds of said plaintiff in amounts sufficient to pay the several promissory notes excepting only two notes dated June 3, 1926, for the principal sum of $3,833.33 each, maturing July 1 and August 1, 1928, respectively; that both of said notes have long since become due and payable and that upon maturity plaintiff paid and discharged the same out of its own funds; that demand was made upon defendant to purchase the bonds of the Continental Properties Corporation sufficient in amount to reimburse plaintiff for the sums advanced by it in payment of said promissory notes and that such bonds have been tendered by plaintiff to defendant and plaintiff offered to deliver to defendant bonds at the face value equivalent to the sum due on said promissory notes.

Defendant first asserts in its affidavit of defense that it did not undertake and promise to purchase the bonds "as the plaintiff in its said declaration has alleged," and points out that the contract says that "these bonds will be purchased" from the plaintiff and argues that this imposed no obligation upon defend-.

ant to purchase; that the contract means that the bonds ''will be purchased'' by some one—not necessarily by the defendant.

The contract must be construed by the court unless its meaning is so ambiguous and uncertain as to call for extrinsic evidence to ascertain its meaning. *Graham v. Sadlier,* 165 Ill. 95. In *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, it was held that the court in construing a contract should take into consideration the surrounding circumstances and should place itself as nearly as can be in the same situation as the parties who made the contract so that ''it may view the circumstances as they viewed them and so may judge the meaning of the words.'' In *Schneider v. Neubert,* 308 Ill. 40, it was said that if the meaning is so clear that no reasonable man could reach more than one conclusion, the court must construe the contract and for this purpose may consider the surrounding circumstances and its meaning need not be left to the jury unless, after considering the circumstances, there remains a doubt of its meaning; but if the extrinsic facts and circumstances are controverted, then the jury must determine the meaning of the contract.

The allegations of the declaration as to the circumstances surrounding the execution of the contract are not denied in defendant's affidavit of defense. Henry S. Duncan was indebted to plaintiff in a sum upwards of $40,000, partially secured by a pledge of personal property, and the defendant, in consideration of plaintiff's release of the liability and indebtedness of Duncan (except his liability on certain notes) and of the surrender of the security, delivered to plaintiff the bonds in question with an agreement and promise to repurchase them so as to put the plaintiff in funds sufficient to pay Duncan's notes as they matured.

The contract, in its entirety, clearly indicates a plan to put the plaintiff in sufficient funds to pay Duncan's notes as they matured. This could be effected only by the undertaking of defendant to purchase the bonds. To construe it, as defendant argues, namely, that some indefinite and undetermined party will purchase, would defeat its obvious purpose. Defendant by purchasing bonds and plaintiff by delivering them to defendant and paying Duncan's notes as they matured carried out the plan in accordance with the terms of the contract and by this conduct evidenced their construction of the contract as imposing mutual obligations. Defendant cannot now be heard to claim it meant something else.

In the second paragraph of the affidavit of defense defendant asserts that the contract is void as unilateral and not binding upon it. It is argued that this is so because the plaintiff has not signed it. Most of the cases cited by defendant are cases where the parties contracted for the sale and purchase of standard supplies, and it was there held that, where one party was bound to sell and the other not bound to take, such contracts were void as lacking in mutuality. The instant contract is not of this kind. It is supported by an adequate consideration,—that is, the release by plaintiff of the liability and indebtedness of Duncan and the surrender of his securities. Defendant accepted the contract and repurchased the bonds as the contract provided, except as to two of the promissory notes last falling due. The plaintiff has fully performed its part of the contract and the defendant also has performed except with reference to said two notes. Where a party accepts or acts upon a contract in writing, it is effective even though he does not sign it. *Stuckrath v. Briggs & Turivas,* 329 Ill. 555, and cases cited. In *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, it was said that, while consideration is essential to the validity of a contract,

"mutuality of obligation is not," and that there were many valid unilateral contracts. See also *Smurr v. Kamen*, 301 Ill. 179. We hold that the second paragraph of the amended affidavit of defense presents no legal defense.

The third and fourth paragraphs of the affidavit of defense assert, in substance, that the title to the bonds described in the contract has not passed to the defendant, and that while defendant may be liable for damages for a breach of contract, it is not liable for the purchase price of the bonds. This, again, calls for a construction of the contract by the court and presents no question of fact for a jury. The point made by the defendant is controlled by the decision in *Osgood v. Skinner*, 211 Ill. 229, and cases there cited. The facts in that case were very similar to those before us. It was there held that the actual delivery of the certificates of stock or an acceptance of them by defendant was not necessary to entitle plaintiff to recover; that where the purchaser refuses to perform his agreement to purchase, the seller who has offered performance on his part may consider the property as the purchaser's and may hold it subject to the call or order of the purchaser and recover the whole price. In *Consolidated Ribbon & Carbon Co. v. Crane Co.*, 183 Ill. App. 392, the general rule was recognized that where the vendee refuses to pay for goods offered, the vendor may store the goods for the vendee and recover the full contract price. The decisive point in that case was that the buyer repudiated the contract to purchase goods of a standard market value before anything was done in the performance of the contract. There was simply an order which was countermanded. In the instant case the contract was performed by both parties thereto except as to the bonds mentioned in the declaration. Under such circumstances plaintiff had the right to treat the title as vested in defendant

and to maintain an action for the purchase price. See also *Smith v. Eitel,* 121 Ill. App. 464; *Kawin & Co. v. American Colortype Co.,* 243 Fed. 317.

Defendant's counsel argues that the Uniform Sales Act of Illinois has changed the law announced in *Osgood v. Skinner,* 211 Ill. 229; that under paragraph 66, subsection 3, chapter 121a, Illinois Statutes, Cahill, it is provided that where the property in the goods has not passed and "if they cannot readily be resold for a reasonable price," the seller may offer the goods to the buyer and if the buyer refuses may treat the goods as the buyer's and maintain an action for the price; that under this provision, before a seller may maintain an action for the contract price, it must appear that the goods cannot readily be resold for a reasonable price and that there is no allegation to this effect in plaintiff's declaration. However, subsection 2 of the same paragraph provides that where under a contract to sell "the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price, although the property in the goods has not passed." By the terms of the instant contract the bonds were to have been purchased by a day certain, namely, the respective dates when Duncan's notes matured, as stated in the contract. This controls the point under consideration. In *Santa Rosa-Vallejo Tanning Co. v. Kronauer & Co.,* 228 Ill App. 236, we held that the Uniform Sales Act had not changed the law in this respect.

While the contract is in the form of an agreement of purchase and sale and respective counsel have so presented it to this court as controlled by the law of such contracts, yet in substance and essence the agreement is not such a contract; it is rather an agreement whereby the plaintiff agrees to release certain securi-

ties and obligations of Duncan and accept as substitutes therefor other securities, namely, the bonds in question, with the understanding that as Duncan's notes fell due and were paid, an equivalent amount of the bonds would be released. It was simply the withdrawal of certain collateral and the substitution of other collateral under the usual arrangement in such cases that the new collateral would be released as the indebtedness secured thereby was paid. In this view of the case it has been somewhat difficult to apply the ordinary rules regulating contracts of sale. However, we have endeavored to meet the case as presented by counsel.

We hold that defendant's amended affidavit of defense was insufficient as a matter of law and that the trial court properly struck the same. For the reasons above indicated the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.