International Filter Company, Plaintiff in Error, v. S. B. Hartman, doing business as Peruna Drug Mfg. Co., Defendant in Error.

Gen. No. 13,835.

1. SALES—*when implication of warranty arises.* Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, of which he has knowledge, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied.

2. SALES—*when no implication of warranty arises.* Where a known, defined and described article is ordered of a manufacturer, even though it is stated to be required for a particular purpose, still if the known, defined and described thing be actually supplied, there is no warranty that it shall answer the purposes for which it was intended by the buyer.

3. SALES—*remedy where purchaser improperly refuses to accept delivery.* Where a purchaser of merchandise improperly rejects delivery, the seller may store such merchandise for the purchaser and give the purchaser notice of such act, and then sue for the contract price.

Attachment. Error to the Municipal Court of Chicago; the Hon. THOMAS B. LANTRY, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed May 18, 1908.

HOBART P. YOUNG and MAURICE W. SIETZ, for plaintiff in error.

FRANK F. REED and CHARLES A. WILLIAMS, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a writ of error sued out from this court by the International Filter Company to reverse a judgment in its favor by the Municipal Court for $30 and costs against S. B. Hartman, doing business as the Peruna Drug Manufacturing Company. The essential assignments of error are that the finding of the court below (which tried the case without a jury) was contrary to the law and the evidence, and that it was error not to find for the plaintiff, the International Filter Company, in the sum of $780.65, and enter judgment on that finding.

The inquiry whether this contention is well made involves a statement of the facts as shown by the evidence.

The plaintiff is engaged in the manufacture of filters and filter discs in Chicago. The defendant is the manufacturer of a proprietary medicine, called Peruna, at Columbus, Ohio.

In August, 1905, the defendant wrote to the plaintiff asking for a catalogue of filters, saying that they expected to use several in their establishment. The result was a sale of a filter by the plaintiff to the defendant in that year. It was a small No. 1 filter, and was sent to the defendant company in September, 1905. It does not appear that the International Filter Company knew for what particular compound or liquid it was used.

Mr. Schumacher, the vice-president of the Peruna Company, however, testified that there was a compound for which they could use the defendant's filters successfully—"a preparation," he says, "of which we use a very small volume"—and it seems probable that this was the liquid which the filter sold in 1905 was used for. But this is not in evidence or material.

October 26, 1906, the International Filter Company wrote the following letter to the Peruna Company:

"Our files show that we have received no disc order from you within the last year. The quantity we supplied last time must be about exhausted by now. To do away with any possibility of your running out, you better order now either for immediate or future shipment.

It is very possible that your requirements have increased so that your present filter equipment is really not large enough for your use. If this is the case, let us hear from you and we will make you a proposition on exchange of your present filter for one of larger size. A filter more than large enough is a good thing, not only from point of rapidity and convenience, but also from point of economy."

To this letter the Peruna Company replied, under date of November 10, 1906, as follows:

"Yours of October 26 received, and in reply will say we have plenty of disc for filters to last us for another year, so will not need any at the present time.

We wish to make inquiry, however, concerning filtration which we find necessary to do in our work, and for which we have been unsuccessful in getting a filter to accomplish for us.

Our mixture consists of different ingredients, which contain oleorosins and different oils in the crude drugs. Some of these are extracted and incorporation in our liquid at the proportion which we want to exist in the same, and with a weak alcoholic solution there is a cloudiness which takes place; we find by experimenting that this can only be removed by incorporating magnesia and filtering the same out, which gives us a

clear product with all the ingredients in perfect solution.

The amount which we wish to filter in one day is 2,000 gallons or more.

As yet we have run across no filter which will perform this work successfully for us. If you have such a filter we will be glad to hear from you at the very earliest date possible.

Yours truly,

The Peruna Drug Mfg. Co.,

Per J. G. Steele."

November 10, 1906, was Saturday, and it may be assumed the letter of that date reached the International Filter Company on Monday, November 12. It was not answered at that or any other time. On Tuesday, November 13, 1906, however, the filter company received the following telegram.

"Columbus, Ohio.                    Nov. 13, 1906.

International Filter Co.,

17th Street and Wabash Avenue.

Express us at once three of your largest size filters, same construction as smaller one sent us.

The Peruna Drug Mfg. Co."

On the same day the drug company wrote to the filter company as follows:

"We wired you today as follows: 'Express us at once three of your largest size filters, same construction as smaller one sent us', and hope that you were able to make shipment at once, as it is absolutely necessary that we should have these filters in our possession by Wednesday or Thursday at the latest. We want the same style of filter that you sent us about a year ago, with the same arrangement of discs, only we desire the largest size that you manufacture.

We hope you have these filters in stock and that prompt shipment was made upon receipt of our telegram. If for some reason, however, shipment has been delayed a day later, see to it without fail that the filters are *expressed to us Wednesday.*"

In answer to the telegram the filter company wrote,

calling attention to the very large capacity of their No. 10 filter—"twenty-two times as great as that of the No. 1 filter you are now using"; also to the fact that they had No. 5 filter, "six or seven times the capacity of the No. 1," and No. 3 filter, "three times the capacity of the No. 1 size." The letter also gave prices of the different sizes of filters in differing materials, and concluded, "We have ready for immediate shipment two No. 3 Filters, Brass Block tinned; three or more No. 3 Iron Galv., three or more No. 5 Iron Galv., one No. 5, Brass-Block tinned, and two No. 10 Iron Galv. If you will telegraph us in the morning just which filter we shall ship you and whether by express or freight, also whether Iron Galvanized or Brass Block tinned, we will follow your instructions and get the filters off at once. If you prefer, you can call us up by long distance telephone, but in any case, if you wish the filters shipped tomorrow would advise that you communicate with us as early as possible."

The answer to this letter was a telegram, as follows:

"COLUMBUS, O., Nov. 14, 1906.
INTERNATIONAL FILTER Co.,
17th and Wabash Ave.
When can you ship number ten brass block tinned filter? Answer wire.
THE PERUNA DRUG MFG. Co."

On the receipt of this telegram, Mr. Engel, the secretary of the filter company, called up the Peruna Company on the long-distance telephone and had a conversation with Mr. Baker, the general manager of the Peruna Company. Engel told Baker that they could not deliver a brass block tinned No. 10 filter for two months, but that they had a galvanized iron No. 10 filter that they could ship immediately. Baker said that the galvanized iron one would do, and ordered it shipped by freight. Engel told Baker that if later it was desired to exchange the galvanized iron one for a brass one, it could be arranged. The filter company then (November 14, 1906) telegraphed the Peruna Com-

pany: "As per telephone instruction from you, we are shipping one number ten Filter Iron Galvanized by freight today," confirming it by letter, in which they said: "In event of your desiring to supply yourself with a No. 10 International Filter, Brass Block tinned, we will allow you to return the No. 10 Iron Galv. Filter to us for credit in part payment at purchase price here, assuming that the No. 10 Filter Iron Galv. be kept in good condition and working order."

On the same day the Peruna Company telegraphed the filter company, if it was not too late, to ship the filter by express instead of by freight. The filter company recalled the filter on its way to the freight depot and turned it over to the express company, which delivered it to the Peruna Co.

A letter of the date of November 28, 1906, from the Peruna Co. to the Filter Co. shows the complaint which the Peruna Co. had to make of the filter, and the position taken by it at that time in relation thereto. They wrote:

"The No. 10 filter which we ordered from you a few days ago will not do the work that we intended to do with it. While we have other work for which we could use it successfully, it is wholly too large for our purpose. We should be glad to exchange this for one of your No. 5 Filters—Brass Block tinned—which you informed us you had in stock. If you have this filter on hand and the idea of exchanging the No. 10 for·a No. 5 is agreeable to you, ship us at once a No. 5 Filter and we will hold the No. 10 for shipment according to your instructions, at our own expense, providing the charges are not greater than from here to Chicago."

In answer the Filter Co. offered to exchange according to their "understanding of the matter," which was that if any exchange was to be made, it was to be for another No. 10 or enough of a less size to aggregate the capacity of a No. 10.

To this letter the Peruna Co. replied, under date of December 1st, saying that they could not possibly, at the present time, see any use for more than one filter,

and added: "We find that the liquid that we had intended to filter through the number 10 cannot be accomplished with that filter or any other. * * * We have another liquid, however, which works more successfully in your filter than in any other that we have tried, and your No. 5 Filter will accomplish this work and more too,—consequently we could not use more than one No. 5."

January 10, 1907, without direction or permission of the Filter Co., the Peruna Co. shipped the No. 10 filter and the unused filter discs which appertained to it, to the Filter Co. at Chicago. This was done on the theory that because, as the Peruna Co. expressed it in a letter of January 21st, "the filter was absolutely unsuitable for their purpose and could not be used in their manufacture," they had a right to return it and avoid the payment of the purchase price. This view, however, was not accepted by the Filter Co., and they signified in their further correspondence their intention of insisting on what they deemed a complete sale, and on the payment of the purchase price. They renewed their offer, however, to exchange the filter thus returned for a No. 10 brass block tinned filter, or three No. 5 brass block tinned filters.

Under date of February 8, 1907, the Peruna Co. notified the Filter Co. that in order to save the latter company storage charges, they had had the reshipped filter delivered by the railroad to them, and held same in their house subject to the order of the Peruna Co., and awaited their instructions as to its disposal. February 15, 1907, the present suit was begun by the Filter Co. against the Peruna Co. in the Municipal Court. The following bill of particulars was filed in the case:

| | | |
|---|---|---|
| Nov. 14, 1906, 1 No. 10 National Filter Galvanized iron | | $675.00. |
| Nov. 14, 1906, | 4 No. 10 Special Cloth Discs | 10.00. |
| Nov. 14, 1906, | 75 No. 10 C. C. Fiber Dics | 9.40. |
| Nov. 15, 1906, | 2 No. 10 Special Cloth Discs | 5.00. |
| Nov. 15, 1906, | 30 No. 10 C. C. Fiber Discs | 3.75. |

Nov. 17, 1906, 500 No. 10 C. C. Fiber Discs............. 62.50.
Nov. 22, 1906,    6 No. 10 Special Cloth Discs......... 15.00.

•    $780.65.

A trial before the court resulted in a finding for the defendant, but thereafter that finding was vacated and the court found the issues for the plaintiff, but assessed its damages at $30 only, and gave judgment for that amount with costs. The $30 was the price of the special cloth discs sold on November 14th, 15th and 22d, which discs the Peruna Co. kept and acknowledged its liability for.

The contentions of the respective parties are very well illustrated in the following excerpts from the testimony of Mr. Schumacher, the vice-president of the Peruna Co., on the one hand, and of Mr. Engel, secretary of the Filter Co., on the other. From Mr. Schumacher's testimony we quote as follows:

"I would not have ordered the filter had I known that it would not do the work."    *    *    *

"Q. No representations were made to you by anybody outside of what information you got through Mr. Steele as to the catalogue and the telephone conversation and the telegrams and letters as to the character or capacity or make up of this filter?

A. No, excepting that I inferred" (implied?) "what we wanted *and they had our letter of* November 10th stating what we needed. But we gave them to understand what we needed in that letter. *If they could not fill our order anyway near the suggestion conveyed in the letters, they should have warned us against the filter.*
    *    *    *    *    *    *    *    *

I surely believed the International Filter Company would consider the order I telegraphed them in conjunction with my letter which explained the functions to which the filter was destined and intended for."

From Mr. Engel's testimony we take this:

"I presume we received such a letter"—referring to the Peruna Company's letter of November 10th. "I

never answered the letter.   I did nothing with the letter.   *   *   *   We had a No. 1 Filter down there—that is, at the Peruna Co.'s works.   The construction of No. 10 filter was the same as that of this No. 1 filter.   *   *   *   It does not differ, except in size and in filter area.   *   *   *   I did not state that the filter would do the work that would be required of it.   *   *   * I stated it would do the same work as No. 1.   While I was at the Peruna Co.'s place'' (this was after the filter had reached there), ''Mr. Schumacher contended that the No. 10 filter would not do the same work as the No. 1, and I told him I contended that it would— it was simply a difference in the capacity.   *   *   *   I did not tell him the No. 10 would do the work.   *   *   * I do not know whether the No. 10 filter will do the work.   *   *   *   It will do the work if No. 1 filter will do the work.   I never told the Peruna people that our No. 10 filter would filter the compound described in the letter of November 10, 1906.   *   *   *   I offered to make a filter do the same proportion of work as the No. 1 size.''

The case has been argued here from the standpoints indicated by this testimony.   The defendant relies on the undoubted rule of law that where a manufacturer contracts to supply an article which he manufactures to be applied to particular purpose, of which he has knowledge, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied.

The plaintiff relies on the equally undoubted exception to that rule, that where a known, defined and described article is ordered of a manufacturer, even though it is stated to be required for a particular purpose, still if the known, defined and described thing be actually supplied, there is no warranty that it shall answer the purpose for which it was intended by the buyer,—and on the collateral and concurrent proposition that to charge a manufacturer with knowledge of the particular use for which a particular thing is intended, so as to raise an implied warranty of fitness

for that particular use, it must be shown that the seller had definite knowledge of this particular use.

These rules do not need the citation of authorities. They are undisputed and well recognized. It is on their application to the facts of this case that the contest arises.

We are unable to agree with the court below in that application. It seems to us that the positions of the plaintiff are well taken. The letter of November 10, 1906, from the Peruna Co. to the Filter Co. was not answered. It was not, therefore, on any express representations of the Filter Co. that the Peruna Co. ordered the No. 10 filter. Nor do we think that it was on representations implied because of that letter preceding the order. An answer to that letter was not even waited for by the Peruna Co. It could not, in the ordinary course, have been received by the Filter Co. until the twelfth of November, which was Monday. On the thirteenth the Peruna Co. gave an express and explicit order by letter and telegram for the immediate shipment of the largest size filters which the plaintiff had, to be of "the same construction," " the same style of filter," that was sent them the year before, "only the largest size" manufactured.

The uncontradicted evidence is that the filter finally sent was "of the same construction," "the same style," as the one before sold, "only the largest size" manufactured.

Was not the plaintiff justified in supposing that the defendant had concluded to act on its own judgment, by ordering a specific thing and taking the risk of its doing what they wanted done, rather than to wait for an answer on the suggestion of the letter of November 10th, that "If you have such a filter" (*i. e.,* one that would perform the work desired satisfactorily) "we will be glad to hear from you at the very earliest date possible"?

The defendant's manager says in his testimony which we have quoted, "If they could not fill our order

International Filter Co. v. Hartman.

anyway near the suggestion conveyed in the letter, they should have warned us against the filter.''

It may be conceded, for the purpose of this decision at least, that the reception of the letter on the twelfth should have so placed the plaintiff's officers in possession of the information it contained, that had it plainly appeared that the order of the thirteenth was in pursuance of the suggestion made in that letter, and was given under a mistaken belief as to the character and capacities of the filter, an obligation would have rested on the plaintiff ''to warn the defendant against the filter.''

But how does it appear, even, that the telegram and letter of November 13th referred to the work to accomplish which the defendant had been unsuccessful in getting a filter? It might well have been that while. looking for a filter to use on the liquid mentioned in the letter of November 10th, the defendant might have needed also additional filters for other liquids. There evidently was one other preparation to be filtered by the Peruna Co. The evidence does not show, nor could the plaintiff know, that there were not many.

But quite apart from this, even if the plaintiff company was bound to assume that the filters specifically and unconditionally ordered on November 13th were intended to filter the liquid mentioned in the letter of November 10th, how could it know, so as ''to warn the defendant against the filters,'' that they would not do that work?

That seems to us something which the defendant ought to have known, but not the plaintiff. The defendant had a filter of the same construction as those they ordered and the one finally substituted, and there is no evidence whatever that the larger filter would not filter anything that the smaller one would. The defendant had also the liquid compound itself for purposes of experiment, and knew exactly of what it was composed and in what proportions.

The plaintiff had the filter, but not the liquid, and

all that it knew of the liquid was that it was "a mixture consisting of different ingredients which contain oleoresins and different oils in the crude drugs." How could anybody, from that description merely, have determined the density or susceptibility to filtration of the mixture? Later the defendant wrote to the plaintiff that the filtration liquid could not be accomplished by the filter they had received *or any other*. There was certainly no reason that this should be known to the plaintiff and not to the defendant. Possibly the defendant company may have had reason, in the customs of trade or the usual course of dealing, to hope or expect that the plaintiff would, as a matter of accommodation, take the filter back if it did not suit them. We do not know. That is the impression one would get from their letters to the plaintiff after the filter had proved incapable of the work they expected to do with it. But they had no legal right to demand it, and, as we think, no sufficient defense to this action for the full amount claimed by the plaintiff.

The plaintiff pursued a permissible course on the return of the filter in storing it for the defendant and giving it notice, and then suing for the contract price. Bagley v. Findlay, 82 Ill. 525.

The judgment of the Municipal Court is reversed and a finding and judgment entered here in favor of the plaintiff in error against the defendant in error for $780.65.

*Reversed and judgment here.*