Nathan Yohalem et al., trading as Yohalem & Diamond, Plaintiffs in Error, v. Fred Matalone et al., trading as G. Matalone, Defendants in Error.

Gen. No. 27,028.

SALES—*when admission of exhibits as samples of article sold erroneous.* The admissibility in evidence of a number of paper bags containing supposed samples of beans sold, in an action for the purchase price of such beans, defended upon the ground that the beans were 17 per cent wormy or rotten, is error when the proof is not satisfactory that the samples of beans were in the same condition as at the time of delivery, the witness testifying that there might be more bugs in them, and when there was not sufficient proof of the manner in which the samples of beans were selected, as the defendants might have selected the worst beans as samples, and such error must have misled the jury when the verdict allowed the plaintiffs only one-half of the purchase price, instead of deducting 17 per cent.

Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed May 1, 1922.

Henry Knaus, for plaintiffs in error.

Isidore Fried, for defendants in error.

Mr. Justice Matchett delivered the opinion of the court.

From a very defective abstract we gather that the plaintiffs in error, who were plaintiffs below, sued the defendants for the purchase price of 22,134 pounds of lupini beans sold and delivered to defendants by plaintiffs at the price of 6½ cents a pound, making a total sum claimed due of $1,438.71; that the defendants filed a plea of the general issue and an affidavit of merits, in which their defense was stated to be that the order for the beans was given by defendants to an agent of the plaintiffs, who told defendants that the beans were "A. No. 1 lupini beans" and warranted that they would contain no more than 2 per cent wormy beans; that the beans were delivered in Chicago, but were not A. No. 1; that on the contrary 4 bags of the beans delivered contained nothing but sweepings, and the beans in the rest of the bags were over 17 per cent wormy or rotten; that defendants notified plaintiffs that the beans were at plaintiffs' disposal, and refused to accept them; that the issues were submitted to a jury who found for the plaintiffs in the sum of $725, upon which, after overruling a motion by plaintiffs for a new trial, the court entered judgment.

The defendants in error have assigned cross error in that the court denied motions made by them at the close of plaintiffs' evidence and again at the close of all the evidence to find the issues for the defendants. It is argued this instruction should have been given on the theory that plaintiffs failed to prove the number of pounds of beans delivered. We think, however, there was evidence from which this might be inferred; at any rate, if we reversed for that reason

we would remand the cause in order to permit such proof, and defendants in error say that they do not request a reversal which will result in another trial.

The plaintiffs in error contend that the court erred in ruling on the admission and rejection of evidence, and also argue that a clear and manifest preponderance of the evidence tends to show that the verdict should have been for the full amount of plaintiffs' demand. The testimony for plaintiffs tended to show that plaintiffs do business in New York; that in July, 1919, through an agent named Blumenthal, they sold to the defendants 100 bags of Italian lupini beans at the price of 6½ cents a pound. Blumenthal testifies that he represented the beans as "good lupini beans." Defendants say it was agreed that the quality of the beans should be "A. No. 1." The beans were shipped in bags and upon receipt of 75 bags defendants wrote plaintiffs that 4 bags were made up of sweepings and that the beans were not of the quality represented by the salesman. The letter says: "He made us understand that we would have found only 2% of lupines rotten or wormeaten, whereas we have found 17% of goods that must be thrown away. * * * Having, however, taken them in, we will keep them if you will allow us one cent per pound. If you will not make such allowance please write us what we shall do with them, and oblige."

An extended correspondence followed, plaintiffs insisting that the quality of the beans was up to the requirements of the contract, and defendants insisting that it was not. Plaintiffs pointed out in the correspondence that in their opinion defendants were taking advantage of the fact that the market price of the beans had in the meantime dropped, and finally, still protesting, offered to give the reduction of one cent per pound claimed, whereupon defendants refused to stand by that proposition, and asked instructions as to the disposal of the beans. The beans re-

mained in the possession of defendants, however, and at least 25 bags of them were afterwards sold by defendants.

There was testimony for defendants to the effect that one of the witnesses had taken beans out of the bags and counted 100 beans and found 17 out of the 100 wormy. This evidence, however, seems inconsistent with other evidence offered by them to the effect that they sell no beans but of the best grade, and that 25 sacks of those beans in controversy were sold by them. As, however, the case must be tried again, we refrain from commenting on the weight of the evidence.

A number of paper bags containing supposed samples of those beans were, over the objection of plaintiffs, received in evidence and have been certified to this court for our inspection. Plaintiffs in error contend that those beans were not properly identified as a part of their shipment and that it was error to receive them in evidence. Preliminary to the introduction of these exhibits defendant Steve Matalone testified: "We have samples of those beans over there in court. There are about six or seven samples there. Those samples were taken out of about 15 or 20 bags." As the trial proceeded the following occurred:

"MR. FRIED: I wish to offer in evidence the sample beans we have here, that the witness testified to.

"MR. KNAUS: I object to that offer; that is two years afterwards, if the court please.

"THE COURT: Well, are they in the same condition now that they were two years ago?

"MR. FRIED: Mr. Matalone, are the beans that were here, those samples of the beans that you purchased from them, in the same condition they were when you bought them? A. I think so, yes.

"Q. Did you take them out of the bags in the same way? A. Yes, sir.

"Q. They are the same bags? A. Yes, sir, the same bags.

"MR. KNAUS: Just the other day he said—

"MR. FRIED: Counsel brought out in his examination, if the court please, that the beans in no possible way could be damaged; that they were in their shipping rooms, and the witness testified in their shipping rooms they were fully protected.

"THE COURT: I did not hear all that the witness said. Are they in the same condition now that they were two years ago? (Addressing witness Steve Matalone.) A. I think not. They might have more bugs in them.

"Q. But they have been in your place ever since? A. Yes, sir, they have.

"Q. And in the same bags? A. The same bags, yes, sir."

Whereupon these exhibits were received in evidence, to which ruling of the court the plaintiffs excepted. The beans were thereupon marked as exhibits and have been certified to this court for our inspection. The quality of these beans is such as to convince us that this evidence was prejudicial to the plaintiffs' case. No doubt the beans themselves, upon preliminary proof that they were the same beans and in the same condition as at the time of delivery, would be most satisfactory evidence. There can be no better evidence than the thing itself which is in controversy. These exhibits are real evidence, but by reason of unjust inferences which may be drawn therefrom the admissibility of such evidence is very much in the discretion of the court. The nature of such evidence and its limitations are discussed and interesting examples given in 2 Wigmore on Evidence, secs. 1160 to 1168.

There are several reasons why we think the preliminary evidence was insufficient to justify the court in receiving these beans in evidence. In the first place, proof that the beans are in the same condition as at the time of delivery is unsatisfactory. The witness states that the beans might have more bugs in them. In the second place, while these beans were admitted

as samples of the whole lot of beans (or at least the jury would so infer), there is not sufficient proof of the manner in which the portions selected for introduction into evidence were separated from other beans, to justify such an inference. These beans were supposed samples, taken just before the trial for the purpose of making evidence.

There is practically no evidence from which the jury could reasonably infer that the beans in evidence are fair samples of the whole lot as it existed at the time of delivery. These exhibits are well calculated to mislead the jury, and the objection to the introduction of them should have been sustained until the necessary preliminary proof was made. For aught that appears here, the defendants may have picked out the worst beans in the lot delivered.

The verdict of the jury, which allowed less than one-half of the purchase price of the beans, is inconsistent with the defense pleaded, which was that 17 per cent of the beans were inferior in quality. We cannot account for the verdict rendered upon any theory other than that the jury were misled by this evidence. For the error in receiving it without proper preliminary proof the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

DEVER, P. J., and McSURELY, J., concur.