236    APPELLATE COURTS OF ILLINOIS.

Santa Rosa-Vallejo Tan. Co. v. C. Kronauer & Co., 228 Ill. App. 236.

## Santa Rosa-Vallejo Tanning Company, Appellee, v. Charles Kronauer & Company, Appellant.

### Gen. No. 27,807.

1. SALES—*evidence of trade custom in action for price.* In an action for the purchase price of harness leather sold to defendant, the court did not err in receiving evidence of a custom or usage in the trade as to the meaning of the word "clear" as applied to harness leather especially where defendant relied on a custom in its pleading.

2. SALES—*admissibility of self-serving writing in rebuttal.* It is not error in an action for the purchase price of a certain kind of harness leather sold to defendant to receive in evidence a post card showing specifications which plaintiff used in making sales where there was contrary evidence for the defendant which the contents of the card tended to contradict.

3. SALES—*when admission of small sample of goods sold is error in action for price.* In an action for the purchase price of harness leather of a particular type sold to defendant, it was not error to exclude certain strips of leather which defendant had cut from the goods delivered, the defense being that the leather received was not equal to the description given when the sale was made.

4. TRIAL—*offer of evidence as misconduct of counsel.* The attorney for plaintiff suing for the purchase price of harness leather sold under trade name is not guilty of misconduct in requesting that the leather delivered to defendant and which was claimed to be an inferior quality to that described by plaintiff's agent when he solicited defendant's order might be examined by experts and in challenging counsel for the defendant to let the jury examine all of the leather, small strips of which the defendant sought to introduce in evidence.

5. ARGUMENTS OF COUNSEL—*comparison between financial status of parties as error.* It was not misconduct for the attorney for plaintiff suing for the purchase price of harness leather sold to defendant to refer to his client in his closing argument as "the poor fellow from California" and to defendant as the "Market street gang" where the word "poor" did not refer to the poverty of the plaintiff, and there was no objection to the use of either phrase and no motion to strike or requested instruction to disregard the statement.

6. SALES—*what constitutes sale under a trade name as question of law.* A sale of harness leather under the name "Buttbranded" harness leather is a sale thereof under a trade name as a matter

Santa Rosa-Vallejo Tan. Co. v. C. Kronauer & Co., 228 Ill. App. 236.

of law where the uncontradicted evidence shows that plaintiff sold five classes of harness leather of which one class was described by the term in question, that such class had been known under that name for many years and had been sold as such by defendant for approximately 30 years and that defendant had been familiar with and had dealt in the various classes, including that in question, for 10 or 12 years under such names.

7. SALES—*implied warranty of fitness for particular purpose in sale under trade name.* A sale of harness leather under the trade name "Buttbranded" is within the application of the Uniform Sales Act, sec. 15, subsec. 4, Cahill's Ill. St. ch. 121a, ¶ 18, subsec. 4, providing that there is no implied warranty of fitness for any particular purpose in the sale of an article under its patent or other trade name, and an instruction to that effect is proper in an action for the purchase price of leather sold under that name by plaintiff to defendant.

8. SALES—*when sale carries no implied warranty of fitness for particular purpose.* In an action for the purchase price of harness leather sold by plaintiff to defendant under a trade name, there is no implied warranty of fitness within the meaning of the Uniform Sales Act, sec. 15, subsec. 1, Cahill's Ill. St. ch. 121a, ¶ 18, subsec. 1, providing for such implied warranty where the buyer makes known to the seller the particular purpose for which the goods are requested and relies on the seller's skill or judgment, where the evidence does not show that the buyer disclosed to the seller the particular purpose for which the goods were required or that he relied on the seller's skill or judgment.

9. SALES—*warranty of merchantability on sale of article under trade name.* A seller of harness leather under a particular trade name is obligated under the Uniform Sales Act, sec. 15, subsec. 4, Cahill's Ill. St. ch. 121a, ¶ 18, subsec. 4, only to deliver the identical article sold, there is no implied warranty of merchantability.

10. SALES—*burden of proving inferior quality of article as affirmative defense.* In an action for the purchase price of harness leather sold under a trade name and delivered to defendant who rejected it as of inferior quality, the burden of proving such inferior quality is on the defendant, where the seller establishes a prima facie case by undisputed evidence and defendant must establish such inferiority by a preponderance of the evidence, such defense being an affirmative one under the Sales Act, sec. 69, Cahill's Ill. St. ch. 121a, ¶ 72.

11. HARMLESS AND PREJUDICIAL ERROR—*harmlessness of invited error in instructions.* Defendant cannot object to error in the use of certain language in an instruction where it has used similar language in its instruction on the same point.

12. SALES—*when contract price is measure of damages for un-*

*delivered goods.* In an action for the purchase price of harness leather sold by trade name to defendant, it is proper under the Uniform Sales Act, sec. 63, par. 1, Cahill's Ill. St. ch. 121a, ¶ 66, subsec. 1, to instruct the jury that the measure of·damages is the contract price for such portion of the leather as complied with the order therefor and that plaintiff could recover the full contract price for a portion of the order which was never delivered to defendant if the jury found that the leather was set aside by plaintiff and was substantially equal in quality to that ordered by defendant and that defendant notified plaintiff that it would not accept such leather if shipped, where the evidence shows that the leather was set aside by plaintiff on a specified date, that it was merchantable and of the kind and quality ordered, that after such appropriation by plaintiff, plaintiff wrote for shipping instructions and was first instructed by defendant to hold the leather until notice and thereafter not. to ship it at all, the sale being one made f. o. b. the seller's place of business, and where the refusal to receive the leather was unjustifiable.

13. SALES—*refusal of inapplicable instruction not error.* In an action for the purchase price of harness leather sold by plaintiff to defendant under a trade name where the defendant refused to pay on the ground that the leather was of an inferior quality, it is not error to refuse to instruct the jury that plaintiff can recover only for such portion of the leather shipped as corresponds with the description of the goods given by the seller's agent before sale, where there was no evidence that the sale was one by description within the meaning of the Uniform Sales Act but was a sale by trade name.

14. INSTRUCTIONS—*refusal of instruction not error where necessary elements of law omitted.* The trial court did not err in refusing to give a requested instruction as to the right of defendant to rescind a contract of sale for inferior quality of goods delivered where the instruction omitted necessary elements of the law relative to sale by description and also of the right of rescission.

15. SALES—*acceptance of part of articles sold as acceptance of entire order.* In an action for the purchase price of 100 rolls of harness leather sold to defendant by plaintiff, it was not error under the Uniform Sales Act to instruct the jury the defendant was chargeable with all of 58 rolls of leather which it rejected if it appropriated any of such rolls to its own use, where the evidence does not show any difference in quality among the 58 rolls and shows that a number of such 58 rolls were used by defendant, since the Uniform Sales Act, secs. 69, 44, Cahill's Ill. St. ch. 121a, ¶¶ 72, 47, permits rejection by the buyer of goods inferior to the description thereof but does not permit rejection of some and acceptance

of the rest of a shipment where all of the goods are of equal quality.

Appeal by defendant from the Municipal Court of Chicago; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed February 19, 1923. Rehearing denied March 1, 1923.

DUDLEY TAYLOR, for appellant; OTTO A. JABUREK and JOHN F. VOIGT, of counsel.

EDWARD L. ENGLAND, for appellee; ORVILLE R. SEITER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the defendant from a judgment entered upon the verdict of a jury for $12,338.90. The statement of claim showed a demand for that amount by reason of the sale by plaintiff to defendant of 100 rolls of Buttbranded harness leather, 33 rolls of which were stated to be "held for shipping instructions."

The defendant in its affidavit of merits admitted the giving of an order for the 100 rolls of harness leather at the price of 70 cents a pound; set up that the shipping of 67 rolls had been made at different times; that the first 9 rolls of leather were of the kind and quality ordered and that defendant owed plaintiff the sum of $1,053.50 therefor, less certain offsets claimed; that the other rolls delivered were examined by defendant upon a reasonable time after delivery and were not found to be of the kind or quality ordered and were in fact not fit for the purpose for which the same were ordered; that it thereupon rejected the same, as it had a right to do; that plaintiff had agreed that defendant might return the leather, and that it agreed to call for the same and take it away, but afterward refused so to do and insisted on payment.

The answer further set up that "BB Harness leather" was known in the trade as "the best leather free from all imperfections save that each side is branded on the butt."

The case has been twice submitted to a jury, the first trial resulting in a disagreement.

The statement of facts by the appellant disregards rule 19 of this court, in that it fails to state "the leading facts which such evidence proved or tended to prove, without discussion or argument and without detail." This omission has added much to the labors of this court.

The plaintiff is a manufacturer of leather at Santa Rosa, California; the defendant a manufacturer of harness leather at Chicago, Illinois.

April 27, 1920, plaintiff, through its broker, S. I. Reed & Company of Chicago, wrote defendant as follows:

"We confirm our telephone conversation of today, and have entered your order for 100 rolls of BB Harness leather, 15/19 ℔ sides, at 70¢ a ℔.; to be shipped by the Santa Rosa-Vallejo Tanning Co., Santa Rosa, Calif. Terms: less 2%—30 days or Net 60 days.

"We have requested Santa Rosa to ship the stock, 10 to 15 rolls weekly.

"Thanking you for the order and with best personal regards, we are."

On various dates from May 8, 1920, to June 29, 1920, plaintiff sent invoices of shipments made on this order.

June 9 defendant wrote plaintiff requesting it to hold up on the order "until you hear from us later, until the railroad people are able to make more prompt shipments."

June 25 defendant wrote plaintiff, asking that when shipments again began, lighter leather might be sent, and July 3 plaintiff replied that it would comply with the request.

June 28 defendant wrote plaintiff complaining that

the shipments were short and that the arrivals were late, and July 28 wrote that it had opened the leather and found it not at all satisfactory; that it was not like sample, was too heavy, soft and spongy, etc. Plaintiff replied that it was sorry that defendant had any cause to complain; that it sent "our regular selection of Buttbranded leather the same as we send to all of our customers."

August 17, 1920, defendant wrote plaintiff: "We have your harness leather on hand, which has been rejected. Kindly let us hear from you by return mail what we shall do with same. If we do not hear from you within ten days we will return shipment to you." Plaintiff replied by telegram August 24: "If you return leather it will be at your own risk."

Alleged errors argued are: First, permitting attorney for plaintiff to ask leading questions to its own witness; second, as to the rulings on evidence; third, prejudicial conduct of counsel for plaintiff; and, fourth, the giving and refusing of instructions.

It is said that the court permitted evidence to be received tending to show an alleged custom in the leather trade, and this, it is urged, was contradictory of the express terms of the written contract. Also, error is argued in that the court received oral evidence to explain the meaning of the word "clear" as it appears in the written order.

We do not think the court erred in these respects. The general rule as to leading questions is subject to many exceptions and usually a matter in the discretion of the court. Thompson on Trials, sec. 360, p. 371. Defendant's own pleading relied on a custom in the trade, and we do not think the court, in receiving evidence of the custom, or evidence as to the meaning of the word "clear" transgressed the rule laid down in well-considered cases. *Lonergan v. Stewart*, 55 Ill. 44. Nor do we think the court erred, as defendant contends, in receiving in evidence a postal card showing

specifications which plaintiff used in making sales, there being contrary evidence for defendant which this tended to contradict.

Neither do we think the court erred, as defendant contends, in refusing to receive in evidence defendant's exhibit 4, which was certain strips of leather which defendant had cut from the goods delivered. *Yohalem v. Matolone,* 225 Ill. App. 221.

Nor do we think there was reversible error in the conduct of the attorney for plaintiff. He asked the president of the defendant company if experts might be sent to the plant to examine the leather which was the subject of controversy. The court overruled an objection interposed. Defendant then made a motion to withdraw a juror and continue the case. Again, when the strips of leather were offered by defendant, the attorney for plaintiff objected and stated that he challenged counsel to let the jury go over and see the leather. This statement was, on defendant's motion, stricken out. Defendant again made a motion to withdraw a juror, which was denied. We do not see error in this. Indeed, if defendant's contentions were correct, an acceptance of the challenge would have offered an effective way of convincing the jury. Counsel for plaintiff in his closing arguments referred to his client as the "poor fellow from California," and to defendant's client as the "Market street gang." It is obvious, however, that the word "poor" as used could not have been understood as referring to the poverty of the plaintiff. The phrase "Market street gang" should not have been used, but specific objection was not made to the use of either phrase. There was no motion to strike, no requested instruction to disregard. The error, if error it was, is not reversible.

Complaint is made of instruction No. 4, which is as follows:

"Under the terms of the order given by the defendant to the plaintiff, such order constituted a sale un-

der a trade name, and the sale of merchandise under a trade name does not embody any implied warranty of fitness of the merchandise for any particular purpose or any implied warranty of the quality of the merchandise.''

The error argued as to this instruction involves the proper construction of section 15 of chapter 121a, Hurd's Rev. St. 1919, of the Uniform Sales Act [Cahill's Ill. St. ch. 121a, ¶ 18]. The first paragraph of that section in substance provides that under the provisions of the act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of the goods supplied under a contract to sell, or a sale, except as stated therein.

Subsection 1 provides that where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether the seller be the grower or manufacturer, there is an implied warranty that the goods shall be reasonably fit for such purpose.

Subsection 4 provides: ''In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.'' It is apparent that instruction No. 4 was given on the theory that subsection 4 was applicable to the facts of this case. Appellant says there is no evidence in the record of a trade name or of a sale under a trade name; that the instruction was in effect an instruction for a directed verdict for the plaintiff because it did not leave the jury to decide from the evidence whether the sale in question was a sale under a trade name or not, but directed the jury that such sale was a sale under a trade name. It says that the term ''Buttbranded'' is not part of the name, but simply states the grade of leather, just like the other grades of it—

244      Appellate Courts of Illinois.

Santa Rosa-Vallejo Tan. Co. v. C. Kronauer & Co., 228 Ill. App. 236.

"A" Harness leather, "B" Harness leather, "No. 2" Harness leather, etc.

If subsection 4 is applicable to the facts, then the instruction was properly given; but if, as appellant contends, subsection 1 of section 15 is applicable, then the instruction was clearly erroneous; or if the question of whether it was the sale of a specified article under its trade name was one on which under the evidence there was an issue of fact, then the question should have been submitted to the jury, and in that case also the instruction would be erroneous.

We are disposed to agree with the contention of the appellee that under the uncontradicted evidence the transaction amounted to the sale of a specified article under its trade name; that as the evidence was uncontradicted, the question of whether the subsection 4 applied became a question of law for the court, and that the instruction was therefore proper.

As to subsection 4, this court has specifically held in *American Spiral Pine Works v. Universal Oil Products Co.*, 220 Ill. App. 383, that this subsection of the statute simply restates the well-settled rule of the common law in regard to the sale of a known, described and definite article; that decision follows the law as laid down by our Supreme Court in *Peoria Grape Sugar Co. v. Turney*, 175 Ill. 631; *Fuchs & Lang Mfg. Co. v. Kittredge & Co.*, 242 Ill. 88.

We think that under the uncontradicted evidence in this case, the phrase "BB Harness leather" was the trade name of a "known, described and definite article." Such indeed appears to have been the construction put upon this term by the pleading of the defendant, which, in the third paragraph of its affidavit of merits, states in substance that the term "BB Harness leather" is used in the harness-making trade, and in buying and selling of leather for harnesses, to denote a certain grade of harness leather, which is "the best leather free from all imperfections save that each side

is branded on the butt''; that said term is commonly used in the trade to denote such grade and use of leather.

It appears from the specifications in evidence that the harness leather manufactured and sold by the plaintiff was of five different kinds or classes, and that five different names were used to describe these classes of leather, such as ''A'' Harness leather, ''B'' Harness leather and ''BB'' Harness leather. The witnesses for both parties showed that they were familiar with these different kinds, grades or classes of harness leather as manufactured and offered for sale by the plaintiff. It appeared without contradiction that plaintiff had been selling its harness leather under these names for upward of 29 years, and that this leather had been, to use the language of one of the witnesses, ''a standard product for many years.'' Defendant had been familiar with these grades of plaintiff's leather for at least 10 or 12 years prior to the transaction out of which the controversy arose.

We therefore conclude that there was no issue of fact for the jury on this point; that subsection 4 was applicable on the uncontradicted evidence; and that by virtue of that subsection there was no implied warranty as to the fitness of the leather delivered for any particular purpose.

Moreover, subsection 1 was clearly inapplicable, as the uncontradicted evidence shows that the defendant in making its purchase of this particular class or kind of leather did not rely on the vendor's skill or judgment; did not, so far as the record shows, make known to the seller the particular purpose for which the goods were required. Under the law, therefore, the plaintiff was obligated to deliver the kind of leather specified, but it did not warrant either the fitness of the leather for any purpose or its quality, other than as the same might be expressed in the particular kind of goods specified. Such has been the continued and

consistent holding of this court in many cases. *Healy Ice Machine Co. v. Clow & Sons,* 148 Ill. App. 421; *International Filter Co. v. Hartman,* 141 Ill. App. 239; *Moderwell & Co. v. Farmers Grain & Feed Co.,* 174 Ill. App. 535; *Elevator Safety Device Co. v. Brown-Ketcham Iron Works,* 153 Ill. App. 313. And such has also been the construction of similar provisions in the Uniform Sales Acts of other States. *Quemahoning Coal Co. v. Sanitary Earthenware Specialty Co.,* 88 N. J. Law 174, 95 Atl. 986; *Wasserstrom v. Cohen, Frank & Co.,* 165 N. Y. App. Div. 171, 150 N. Y. Supp. 638.

Appellant argues that instruction No. 4 in effect directed the jury that the plaintiff could recover even though the leather delivered was absolutely worthless, and some authorities are cited to the effect that even in a sale under a trade name there is an implied warranty that the article sold should be merchantable. In this connection appellant cites Williston on Sales, 1909, p. 311, where it is said: "In this country, as has already been seen, where there is a contract to sell goods by description, there is an implied warranty that the goods shall be merchantable." This statement, however, we think, refers to subsection 2 of section 15, which lays down the law applicable where goods are bought by description. The section clearly distinguishes between such a sale and the sale of a specified article under its patent or trade name.

We think that under subsection 4, if a buyer in fact secured the specific article which he bought and which was sold under a trade name, the delivery of the identical article bought would be a condition precedent to the recovery of the price for which it was sold, but there would be no implied warranty of fitness.

Defendant next argues error in the giving of instructions Nos. 5 and 8 as requested by plaintiff. In these instructions the jury were told that the burden of proof was on the defendant to establish by a pre-

ponderance of the evidence that the leather in question was inferior in quality to the leather described in the order, and that if defendant had failed in this the jury should find the issues against it; that the defendant must by a preponderance of evidence establish that the 58 rolls of leather rejected by it were of ·a different description of goods than shown in the order, and that unless the jury believed that the 58 rolls were of a different description, they should find the issues against the defendant. As to these 58 rolls of leather, it is argued that these instructions are erroneous in that they state that the burden of proof is on the defendant, while in fact it was on the plaintiff; that no attempt was made to differentiate between the leather which was shipped and the 33 rolls not shipped; that the instructions placed on the defendant the burden of proving the quality of the leather which it had never seen and which was more than 2,000 miles away, and authorized a finding against the defendant if it failed to make this proof.

That as a general rule the burden of proof is on the plaintiff to establish his case by a preponderance of the evidence is elementary and scarcely requires the citation of authorities. *Abhau v. Grassie*, 262 Ill. 636. It is, however, also true that when under the pleadings it appears that a defendant relies upon an affirmative defense, the prima facie case of the plaintiff having been established, it is proper for the court to instruct the jury that the burden of establishing such affirmative defense is upon the defendant who asserts it. It was so held in *Morris v. Wibaux*, 159 Ill. 627, where the contract was to deliver cattle of a certain described kind. This case was followed in *Burt v. Garden City Sand Co.*, 237 Ill. 473, where the seller sued to recover the purchase price of cement which was warranted to be of a certain quality, and where the court approved an instruction which told the jury in effect that under the law of this State it was incum-

bent upon the parties claiming damages, by reason of a breach of warranty, to prove such warranty. The court said that if the vendor delivered cement to the vendee which the vendee claimed was not up to standard and according to specifications, "The burden rested upon it to show that fact." To the same effect is *Underwood v. Wolf,* 131 Ill. 425. The defense of defendant here was necessarily based on section 69 of the Sales Act [Cahill's Ill. St. ch. 121a, ¶ 72]. The defense which it so sought to introduce was an affirmative one. The plaintiff established a prima facie case by undisputed evidence, and we think it was therefore, under the facts of the case and the pleadings, not erroneous for the court to instruct the jury that the burden of proof to establish the defense pleaded was upon the defendant. As to the 33 rolls, the evidence that these were of the kind ordered is uncontradicted.

The 8th instruction is criticised because the word "weight" was not used in describing the leather; but we think that, while not expressly stated, it was necessarily included in the description used. At any rate, the defendant made use of similar language in its instruction No. 9 on the same point, and is not, therefore, in a position to complain.

It is also argued by appellant that the court erred in giving instructions Nos. 3 and 7. By No. 3 the jury were told that if they found the issues for the plaintiff, the measure of damages was the contract price for all or such portion of the leather as it might find from the evidence and under the instructions of the court was in compliance with the order. By instruction No. 7 the jury were told that if they believed that the plaintiff on or about June 29, 1920, set aside for the defendant the unshipped portion of leather ordered, namely, the 33 rolls, and if they believed that the plaintiff was and had been at all times since June 29, 1920, ready, able and willing to ship the 33 rolls of leather, and if they believed that the 33 rolls of

leather were substantially and materially equal in quality and specification to the leather ordered by the defendant, and further that defendant notified the plaintiff that it would not accept the 33 rolls of leather if plaintiff shipped it to defendant, the plaintiff was entitled to recover the purchase price of the 33 rolls of leather. It is said that these instructions are erroneous in that they do not differentiate between the situation as shown in the evidence as to the 67 rolls of leather shipped and the 33 rolls not shipped; and it is said that the instructions are in direct conflict with section 63, subsec. 3, of the Uniform Sales Act, Hurd's Rev. St. 1919, ch. 121a [Cahill's Ill. St. ch. 121a, ¶ 65, subsec. 3], which provides that:

"Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section 64 (4) are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

Appellant says that there is nothing in the record to show that the 33 rolls not delivered could not have been resold for a reasonable price, or that the plaintiff notified the defendant that it was holding the 33 rolls as bailee for the defendant. It says that the true measure of plaintiff's damages is set forth in section 64 of the Sales Act [Cahill's Ill. St. ch. 121a, ¶ 67], which provides in substance that where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance, and that the measure of damages is the estimated loss directly and naturally resulting, in the natural course of events, from the buyer's breach of contract; that where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater

250　Appellate Courts of Illinois.

Santa Rosa-Vallejo Tan. Co. v. C. Kronauer & Co., 228 Ill. App. 236.

amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or if no time was fixed for acceptance, then at the time of the refusal to accept. Appellant says that there is nothing in the record to show that there was no available market, and that there is no showing of any "special circumstances" to warrant damages other than the difference between the contract price and the market price, if any.

Prior to the enactment of the Uniform Sales Act the seller had an election of remedies where the buyer refused to accept the merchandise. He might store the merchandise for the buyer and sue for the contract price; he might keep the merchandise and recover the excess of the contract price over the market price, or he might sell the merchandise at the market price and recover the difference between the market price and the contract price. The law is clearly stated on this subject in the case of *Osgood v. Skinner*, 211 Ill. 229, which was a case where suit was brought to recover the contract price of certain certificates of stock which had not been delivered. In this case the court stated:

"If there has been no delivery of personal property, the seller who has offered performance on his part may consider the property as the purchaser's, and may either sell it and sue for the unpaid balance of the price, or may hold it subject to the call or order of the purchaser and recover the whole price. * * * The rule of this court has been that the vendor may elect to sue for damages or to treat the property as the property of the vendee, nothwithstanding a refusal to accept it, and sue upon the contract for the whole contract price."

We do not think that the Uniform Sales Act has changed the law upon this subject. Section 63 of that Act, under the heading "Remedies of the Seller," states one of these remedies to be an "Action for the

price," while section 64 describes an "Action for damages for non-acceptance of the goods." Paragraph 1 of section 63 provides:

"Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods."

In order to determine whether this paragraph is applicable to the facts of this case it is necessary to determine whether the property in the 33 rolls of leather passed to the buyer. The provisions of the Sales Act also lay down specifically the rules by which this question must be determined. In part second, under the heading "Transfer of Property as between Seller and Buyer," in section 17 thereof [Cahill's Ill. St. ch. 121a, ¶ 20], it is stated:

"No property passes until the goods are ascertained. Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained."

Section 19 [Cahill's Ill. St. ch. 121a, ¶ 22] states certain rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. Rule 4 states:

"Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract; either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

By another paragraph it is provided that in an f. o. b. sale, delivery to the carrier constitutes an appropriation of the goods to the contract.

There was testimony for the plaintiff in this case

252    APPELLATE COURTS OF ILLINOIS.

Santa Rosa-Vallejo Tan. Co. v. C. Kronauer & Co., 228 Ill. App. 236.

which tended to show that on or about June 29, 1920, it set aside 33 rolls of BB harness leather as provided by the defendant's order; that these rolls were merchantable and of the kind ordered and specified; that after they were so set aside the defendant wrote plaintiff requesting that the same should not be shipped until further instructions; that afterward plaintiff requested from defendant instructions as to shipping, which were refused.

The sale, according to its terms, was f. o. b. at Santa Rosa, California, and the title to the property would undoubtedly have passed to the defendant upon delivery of the same to the carrier for shipment. The defendant refused to give instructions for shipping and informed plaintiff that the leather would not be received if it were shipped. It was, we therefore think, unnecessary that the plaintiff should have delivered the leather to the carrier in order to fulfill its part of the contract. If the refusal of the defendant to receive the leather was unjustifiable, as it was found to be, then, we think, under these provisions of the Sales Act the jury were justified in finding that the property in the 33 rolls of leather passed to the defendant at the time the plaintiff, in pursuance to the terms of the contract, set the leather aside for the defendant's use. As was said in *Osgood v. Skinner, supra:* "If, before or at the time of performance, the purchaser has declared his intention not to perform or refuses to do so, the seller need only prove that he was ready and willing to perform on his part." Mechem on Sales, sec. 1674, states the rule thus:

"If the title has passed, and the seller has done all that is required to be done upon his part—has taken the goods to the specified place, if any, or tendered them when tender is required, or, as in the usual case where no such active performance is required, stands ready and willing to surrender the goods upon performance by the buyer—and the buyer fails or refuses

to take the goods and pay the price, an action as for goods bargained and sold may be maintained.   An actual change of possession is not essential to sustain an action for goods bargained and sold if the title has been transferred.''

To the same effect is *Kawin & Co. v. American Colortype Co.,* 243 Fed. 317.

Our conclusion is, therefore, that the court did not err in giving these instructions.

The appellant also complains of certain instructions given by the court on the question of agency, and also argues that the court erred in refusing to give the 18th instruction offered by the defendant.   By this instruction the jury were told that as a matter of law, where there is a contract to sell, or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description; that where there is a breach of such warranty by the seller, the buyer may at his election, among other things, rescind the contract to sell or the sale, and refuse to receive the goods, or may, if the goods have already been received, return them or offer to return them to the seller; that if the jury should find from all the evidence in the case that the defendant within a reasonable time examined the 58 rolls of leather in question, and that the leather was of a poorer or inferior grade and was not of the weight stated in the contract for the sale thereof, and rescinded its contract and offered to return the 58 rolls of leather, then the plaintiff could not recover for any more than the first 9 rolls of said leather.   It is argued that this instruction states the law as expressed in sections 14, 44, 47 and 69 of the Uniform Sales Act, *supra.*

We think the court did not err in refusing to give this instruction.   As we have already said, this was not a sale by description within the meaning of the Sales Act, but was, on the contrary, a sale under a trade name.

The instruction is also subject to criticism in that it omitted the necessary element of whether the 58 rolls rejected were goods of a different description, not included in the contract. Again, this instruction does not fully state the law, in that while it informs the jury that the buyer might rescind the contract for breach of warranty, it does not inform them that the buyer might not rescind if he knew of the breach of the warranty at the time he accepted the goods; nor that to entitle the buyer to rescind the sale he must exercise his right within a reasonable time after the time of the delivery of the goods and must notify the seller of his election to rescind within a reasonable time, and must be able at the time of rescission to return all of the goods received from the seller in substantially as good condition as when the property and the goods were transferred to the seller.

Complaint is also made by appellant of instructions Nos. 10 and 11, given at the request of the plaintiff.

Instruction No. 10 told the jury that if they believed from the evidence that the 58 rolls of leather rejected by the defendant were substantially of the same grade, quality and weight, and if they believed the defendant had used or disposed of any number of said 58 rolls prior to the rejection of the same, the defendant under the law would be deemed to have accepted all of the 58 rolls of leather and was obligated to pay the plaintiff the purchase price therefor.

Instruction No. 11 told the jury that if they believed the defendant "has not now in its possession 58 rolls of the leather received from plaintiff under the order in question, and if you further believe from the evidence that defendant in any manner appropriated any of said 58 rolls to its own use, prior to the time defendant claims to have rejected said 58 rolls, you should find the issues against the defendant as to its liability to pay for the 67 rolls of leather."

It is urged that these instructions do not correctly

state the law as laid down in sections 44 and 69 of the Uniform Sales Act [Cahill's Ill. St. ch. 121a, ¶¶ 47, 72]. Prior to the enactment of that act it was certainly true that a party to a contract could not affirm a contract in part and rescind as to the residue. If he rescinded he must rescind *in toto,* and it was necessary that he put the opposite party in the same condition that he was in before the sale, by a return of the property purchased. This was the law as stated in many decisions. *Wolf v. Dietzsch,* 75 Ill. 205; *Illinois Glass Co. v. Ozell Co.,* 197 Ill. App. 626; *Waukesha Canning Co. v. Horner & Co.,* 138 Ill. App. 564; *Steinberg v. Schwartz,* 219 Ill. App. 138.

Paragraph 3 of section 69 of the Uniform Sales Act lays down rules which we think are in harmony with these decisions. It provides in substance that where goods have been delivered to a buyer he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

It is true that under the provision of section 44 the buyer is given the right to reject "goods of a different description not included in the contract." Under this provision it was permissible for the defendant on its theory to accept the 9 rolls while refusing the 58 rolls of leather which, as it claimed, were of a different description; but it does not claim that the 58 rolls were in any way different from each other, and there was testimony tending to show that 6 of these 58 rolls had been used by the defendant.

We think that these, and other instructions of which defendant complains, stated the law applicable, and that the court did not err in giving them.

It is argued by appellant, although not at length, that the verdict of the jury was against the manifest weight of the evidence. We do not think so. We have gone over it with some care and are inclined to believe that the real reason for the attempted rejection of the goods and rescission of the contract was that after the contract was made the market price of this kind of leather went down.

The judgment is therefore affirmed.

*Affirmed.*

McSURELY, P. J., and DEVER, J., concur.